### STARR and another *against* KNOX.

THIS was an action of book debt, for articles furnished in *New-York*, in the summer of 1811, as necessaries and outfits of the brig *Neptune*, bound on a voyage to *New-Orleans*, and for advances for the repairs of that vessel, made in *New-Orleans*, in the autumn of the same year. The defendant pleaded *nil debet.*

The cause was tried at *Middletown, December* term, 1816, before *Trumbull, Hosmer* and *Gould*, Js.

Though the register of a vessel is not conclusive evidence of ownership; yet where a person, from the proper documents appears to be the unconditional owner, it must be considered as a declaration to the world, that he is owner; and he becomes liable, of course, for necessary disbursements in repairs and supplies, procured by the master, during a voyage.

To protect a mortgagee of a vessel from the general liability of owners for disbursements, it is necessary, either that he should not appear from the papers to be the owner, or that his character as mortgagee should accompany the evidence of his title.

*New-Haven,* June, 1817.

Merwin
*v.*
Huntington.

On the trial, the plaintiffs, having proved their account, gave in evidence the register of the vessel, in the name of the defendant, at *Middletown,* on the 8th of *August* 1808, and the following oath made by him, at the custom-house : " I solemnly swear, that to the best of my knowledge and belief, the brig *Neptune* of *Hartford,* burthen 152 tons, was built in the state of *Massachusetts,* in the year 1795 ; and that I, *Normand Knox* of *Hartford,* in the state of *Connecticut,* am sole owner of said vessel, and citizen of the *United States ;* and that there is no subject or citizen of any foreign prince or state, directly or indirectly, by way of trust or confidence, or otherwise, interested in said vessel, or in the profits or issues thereof." It was agreed by the parties, that during the time embraced by the plaintiffs' account, the vessel was furnished with this register. The plaintiffs claimed, and offered evidence to prove, that one *Normand Butler* of *Hart-ford,* applied to them in the city of *New-York,* where their trading establishment then was, with said vessel, under his care and controul, and represented to them, that she was owned by the defendant, that the register was in the defendant's name, and that he was the defendant's agent in regard to the vessel ; that he desired them to furnish the vessel with necessary outfits, on the defendant's credit ; that finding, on application to the custom-house in *New-York,* the register to be in the defendant's name, they agreed to furnish, and in part did actually furnish such outfits, on the defendant's credit ; that soon afterwards, one *Jones,* with *Butler's* approbation, entered on board the vessel, as master for the contemplated voyage, and continued in that capacity, until her return from *New-Orleans,* in *April* 1812 ; that while she was on her passage to *New-Orleans,* sundry repairs became necessary, and the plaintiffs, by their agents in *New-Orleans,* at the request of *Jones,* made the necessary advances for the repairs, as charged in the account ; that at the time of making these advances, the plaintiffs had no knowledge that any other person than the defendant had any interest in the vessel, and made them on the defendant's credit ; trusting to the vessel's papers, as well as to the representations of *Butler.*

The defendant gave in evidence a bill of sale of the vessel to him and one *Ledlie,* from *Thomas Marston* of the city of *New-York,* and a writing of defeasance, executed by the de-

fendant and *Ledlie* to *Butler ;* and the defendant claimed, and offered evidence to prove, that the consideration of that sale was money paid by him to *Marston,* to extinguish a debt due from *Butler* to *Marston,* as security for which the vessel had been previously held by *Marston,* by virtue of an absolute conveyance to him from *Butler.*

*New-Haven,*
June, 1817.

Starr
*v*
Knox.

At the time the defendant took this bill of sale, and gave the defeasance, the vessel was on a voyage to *Demerara ;* and the defendant admitted, that he took the freight earned in that voyage, and applied it towards *Butler's* debt to him.

Between the execution of the defeasance, and the registry of the vessel in the defendant's name, *Ledlie* conveyed all his right therein to the defendant, by an absolute bill of sale.

The defendant also claimed, and offered evidence to prove, that *Butler,* for several years before the plaintiffs' account accrued, and ever after, had the sole direction, use and emolument of the vessel, and gave notice thereof to the plaintiffs, at the time the application for outfits was made to them ; and also told them, that the defendant had no concern with, or interest in, the voyage to *New-Orleans.* It was, nevertheless, admitted, that the defendant, in several instances, during the time that *Butler* had the controul of the vessel, had caused her to be insured, by a policy in his own name, in the insurance office at *Hartford ;* and that *Butler* had also, in several instances, during the same time, caused her to be insured in *his* name, in the same office. On her voyage to *New-Orleans,* she was not insured.

The plaintiffs claimed, that *Butler's* interest in the vessel, if he had any, was unknown to them ; and that *Butler* had the management of the vessel, by the permission of the defendant.

They finally contended, that if the jury should find the facts as they claimed them to be, the verdict ought to be in their favour ; and prayed the court to instruct the jury accordingly.

The defendant, on the other hand, insisted, that the facts conceded, and proved by him, warranted a verdict in his favour.

The court charged the jury as follows. " The court are of opinion, that if the advances were made by the plaintiffs, on the credit of *Butler,* the defendant is not liable. If you find, that they were made on the credit of the defendant,

*New-Haven,*
*June, 1817.*

Starr
*v.*
Knox.

the question is, whether *Butler* had authority to contract for the defendant, and on his credit. The register is not conclusive evidence, that *Butler* had authority to make the contract in question with the plaintiffs ; and if you find, that the defendant was only mortgagee of the vessel, not in possession, the defendant is not by law chargeable, unless he actually empowered *Butler* to make the contract in question for him, and *Butler* actually made the contract for the defendant under that authority. If, on consideration of the evidence, you shall be of opinion, that the defendant actually gave such authority to *Butler,* and that *Butler* actually made the contract for the defendant, you will find for the plaintiffs to recover of the defendant the amount of all such items of account, as you shall judge necessary and proper, as supplies for, and repairs of, the vessel : if otherwise, you will find for the defendant."

Under this direction, the jury found for the defendant. The plaintiffs moved for a new trial ; and the questions of law arising on such motion were reserved for the consideration and advice of the nine Judges.

The case was fully and ably argued, by *Sherman* and *C. Whittelsey,* in support of the motion ; and by *T. S. Williams* and *Staples,* contra. The authorities principally relied on, by the former, were, *Rich* v. *Coe, Cowp.* 636. *Cary* v. *White,* 5 *Bro. Parl. Ca.* 325. (*Toml,* edit.) S. C. cited *Abbott* 145. (*Story's* edit.) *Stokes* v. *Carne & al.* 2 *Camp.* 339. *Westerdell* v. *Dale,* 7 *Term Rep.* 310. and *Williams* v. *Sanger* and *Kelly,* decided in this Court, *June* term, 1812.(a) The

(a) Samuel Williams *against* Hezekiah Kelly and John Sanger.

THIS was an action of book debt, brought by *Williams* against *Kelly* and *Sanger,* as joint owners of a vessel, for advancements made, and services rendered, at the request of the master, in a foreign port.

The facts in the case were these. *Kelly* and *Sanger* were joint owners of the schooner *George ; Kelly* owned three fourth parts, and *Sanger* one fourth part. While the schooner was at sea on a fishing voyage, *Kelly* projected a voyage from the straits of *Bellisle* to *France,* to which *Sanger* dissented ; but, *Kelly,* being owner of the major part of the vessel, claimed the right of controuling the voyage.

On the 10th of *June* 1807, the schooner being then on the fishing ground at the straits of *Bellisle, Sanger* executed a charter-party of his fourth part of the vessel to *Kelly,* for a term of time sufficient for the performance of a voyage from thence to some one or more ports in *Europe,* and back to a port of dis-

counsel for the defendant cited *Jackson* v. *Vernon,* 1 *H. Black.* 114. *Chinnery* v. *Blackburne,* 1 *H. Black.* 117. *n. M'Intyre & al.* v. *Scott,* 8 *Johns. Rep.* 159.

charge in the *United States,* to commence on the day when she should sail on the intended voyage, for the consideration of two dollars *per* ton for each calendar month during which she should be thus employed. It was stipulated, that *Kelly* should sustain the whole risk of *Sanger's* interest in the vessel during the voyage; and that *Sanger* should furnish his fourth part of the vessel, on her departure for the voyage, with sufficient rigging, sails and furniture, so as to render her sea-worthy. It was also stipulated, that *Kelly* should incur the whole expense of victualling, manning, port-charges, pilotage, and all other expenses during the voyage. *Kelly* appointed *Elias Lord* master of the vessel, under whom she proceeded from the straits of *Bellisle* on the intended voyage.

The schooner, on the 26th *December* 1807, sailed from *Bordeaux,* bound to *New-Orleans,* with a cargo of wines, on freight. On the next day, she was captured by the privateer cutter *Mars,* and ordered for *Falmouth,* (*England,*) where she arrived on the 2d of *January* 1808, and was libelled in the high court of admiralty. *Lord,* the master, being destitue of funds, addressed himself, by letter of the 8th *January* 1808, to the plaintiff at *London,* representing his situation, and requesting his advice and pecuniary assistance to enable him to interpose a claim in behalf of the owners, whom he stated to be *Hezekiah Kelly* and *John Sanger.* The plaintiff accordingly interposed a claim in behalf of the defendants before the court of admiralty; in the prosecution of which, and in endeavouring to procure a release of the vessel, his claim for advancements and services originated. *Kelly* had the entire controul of the vessel, and of the voyage; and the master received his instructions from him alone.

On the trial, before the superior court, the only question was, whether under all the circumstances of the case, *Sanger* was liable to the plaintiff's demand.

Upon the facts above stated, the court instructed the jury, that the law was so, that *Sanger* was not liable to pay the charges and expenses of the vessel during the voyage, nor for the matters and things charged to the defendant by the plaintiff, during the capture; and that, therefore, they must find, that the defendant, *Sanger,* did not owe in manner and form, &c. The jury found a verdict for the defendant *Sanger* accordingly, and found for the defendants their costs. And the plaintiff moved for a new trial, on the ground of a misdirection; which motion, with the matter of law arising thereon, was reserved for the opinion of the nine Judges.

*Daggett,* in support of the motion, contended, 1. That the owners of a vessel are liable for all necessary expenditures, made at the request of the master. *Abbott,* 142. (*Story's* edit.) In cases of extreme necessity, the master may even *sell* the vessel for the benefit of the owners. *Hayman* v. *Molton & al.* 5 *Esp. Rep.* 64. The expenditures, in the case under consideration, were clearly necessary.

2. That *Sanger* was jointly liable with *Kelly:* First, because he was not discharged from his liability by his dissent to the voyage. If he were, a minority would govern the majority. From the nature of the property, it would be useless, unless employed together. *Abbott,* 105, 106. Secondly, the charter-

SWIFT, Ch. J.   It is clear, that the register is not conclusive evidence of the ownership of a vessel : and this is a reasonable rule ; for there may be cases where it would be

party fixes a liability upon *Sanger.* He let his share of the vessel ; and besides, he was indemnified against its loss. He continued owner ; and therefore, was liable for the acts of the master. The papers of a ship are evidence of ownership to the whole world.   See *Rich* v. *Coe, Cowp.* 636.

*Goddard,* contra, contended, that part owners are not liable for expenses incurred, in case they dissent to the voyage.   The master can bind the owners only on the ground that he is their *agent.*   *Abbott,* 142. *et seq.* (*Story's* edit.) *Boson* v. *Sanford & al. Comb.* 117. *Jackson* v. *Vernon,* 1 *H. Black.* 114.   1 *Com. Contr.* 335.

The *charterers* of a vessel are liable for expenses accruing during the voyage, and not the owners.   The master is *their* agent ; his acts, therefore, cannot bind the owners.   *James* v *Jones & al.* 3 *Esp. Rep.* 27.   *M'Intyre* v. *Bowne,* 1 *Johns. Rep.* 229.   *Oliver* v. *Greene,* 3 *Mass. Rep.* 133.

BRAINARD, J.   [After stating the case.]   The court in giving the charge to the jury, stated, *that inasmuch as Sanger dissented to the voyage, and Kelly appointed Lord master, and gave him all the orders and instructions, the law was so, that Sanger was not liable for the matters and things charged to the defendants by the plaintiff, during the capture ; that he was not liable to the plaintiff's demand.*   Stress seems to have been laid on the idea of a *dissent.*   This ought to have been laid totally out of the case, as not existing ; but if it did exist, it would not, in my opinion, vary the conclusion.   It is a general regulation, in all commercial countries, in relation to ships, that the majority in value shall direct their employment.   Our own maritime code, enacted by our ancestors at an early period of their political existence, lately repealed, and which discovers no small share of knowledge and research on the subject, contemplated the same thing, and said, " those sending forth shall be liable to respond to those dissenting, upon insurance, according to the custom of merchants."   But the interest of the dissenting minority is differently protected in different countries ; protected reasonably it ought to be.   Perhaps, the most rational method, is that adopted, and long practised, in *Great-Britain.*   On application to a court of admiralty, by the dissenting minority, a valuation is made, security compelled, and performance of stipulations enforced, in case of loss.   These powers of a court of admiralty, have long since been recognized, and established, by courts of common law.   And I see no reason why the same method cannot, and should not, be practised here.   If the dissenting minor owner has neglected to take these precautions, the vessel, when she sails, sails *his,* so far as his interest extends ; and he is liable to all the consequences which may flow to an owner.

But the present case is not the case of a dissenting minor owner.   It is true, *Sanger* would have nothing to do with the voyage, as such ; but he assented, that his part should perform it under a charter-party.   The voyage was *Kelly's ;* but of the vessel, *Sanger* remained joint owner with him.

One position, which, in substance, is found in all our elementary writers on this subject, and which is the basis of a vast variety of decisions, determines one question ; which is, that the master, as agent for the owners, can bind them

advantageous to commercial men that vessels should be transferred on a voyage, when the register cannot be exchanged.

It is a general rule, that the owners of vessels are liable for necessary disbursements in repairs and supplies, procured by the master, during a voyage. Though, in some instances,

*New-Haven*,
June, 1817.

Starr
*v.*
Knox.

for all necessary supplies, furnished the vessel; and when without funds in a foreign port, especially, when incapable of raising money upon the ship itself, for all monies advanced him to purchase necessaries with. The authority of the master is to provide necessaries. The case of *Cary* against *White*, 5 *Brown's Parliamentary Cases*, 325. (*Toml.* edit.) determined in the house of lords, in the year 1710, establishes the principle of the personal liability of the owners, and at the same time shews, that there must be an actual existence of the necessity of the thing, which gave rise to the demand. Considering the situation of the vessel, there can be no doubt but that the advancement was highly and eminently necessary; and that the master, as agent for the owners, had power to bind them.

The only question that can arise, is, was *Sanger* an owner? It is said, that *Kelly*, *pro hac vice*, was sole owner. But the papers under which the vessel sails, must always determine the true ownership. *Abbott*, 25. et seq. (*Story's* edit.) A stranger can rely on nothing else. These, supported by the declarations of the master, are letters of credit; they are drafts, which, for necessaries, he may safely honour. A vessel may be, and frequently is, under a charter, of which the master has no knowledge. A charter-party may be a mere private agreement, which can never affect a stranger. It is true, a charter-party may be of importance in relation to freight. The charterers of a vessel may be the owners, as it respects the freighters. When the master is appointed by the charterers, and in their behalf; when he makes the contract with the freighters; they, as owners, are accountable for his contract, and for his conduct as their agent. When there is a claim for misbehaviour or defalcation of the master, the question must always be, whose servant was he? Whose, by the contracting parties, was he *understood* to be? But for supplies and advancements necessary for the ship, the owners are liable: for these, the master is always their agent. For necessaries, he can bind them, because it is their ship: unless, indeed, from some particular circumstance, it is apparent, that the owners were intended to be absolved, and the credit is given to some one else.

An attention to the above distinction, I apprehend, will reconcile all the seeming difficulties in the books. The case of *James* against *Jones & al.* 3 *Esp. Rep.* 27. does not, in my view, militate against *Parish* against *Crawford*, 2 *Stra.* 1251. In the former, although the ship belonged to the defendants, yet she had been chartered for the voyage to *Reed* and *Parkinson*. Lord *Kenyon* was therefore of opinion, that they were to be deemed owners for that voyage, and the master, *pro hac vice*, their agent. In the latter, *Lee*, Ch. J. says, "the true consideration is, whether *Crawford*, by chartering to *Fletcher*, has discharged himself as owner?" And immediately adds, "*Crawford* considers himself as governour of the ship." He covenanted for the government of the ship during the voyage, and it was navigated by his master. In both actions, the claim was for not delivering goods taken on freight.

But the case of *Rich* against *Coe & al. Cowp.* 636. goes the whole length of the case under consideration. *Rich*, the elder, and *Rich* the younger, rope-

this may bear hard on the master, as where he has chartered the vessel ; yet is for the advantage of ship-owners that this rule should be adopted ; otherwise, vessels might be lost for want of a power in the master to pledge the credit of the owners for necessary repairs and supplies.    But a mortgagee not in possession is not liable for such disbursements : for if he were liable, it would render it extremely inconvenient to take a mortgage on a vessel for the security of a debt ; and this would discourage, if not prevent, a practice, which is frequently found to be advantageous to the interests of commerce.

The court, then, decided correctly, in stating these general principles in their charge.    But there is another point in the case, on which the court gave no opinion ; and by the omission of which, the jury were permitted to come to a wrong result.    From the facts stated, it is agreed, that the defendant had executed a writing to *Butler*, by which he held the vessel as security for a debt ; yet from the register and papers he appeared to be the absolute, unconditional owner of the vessel.    Whenever the mortgagee of a vessel intends to protect himself from the general liability of owners for disbursements, it is necessary, either that he shall not appear from the papers to be the owner, or that his character as mortgagee should accompany the evidence of his title ; otherwise, merchants furnishing supplies may be deceived and defrauded.    If he procures a register in his own name, there should be an indorsement on the register, or some other evidence that he claims as mortgagee ; and then no deception will be practised.

makers, supplied the ship with cables, by order of *Harwood*, and made *Harwood* and the owners of the ship, without naming or knowing them, particular debtors.    The fact was, the ship, at that very time, was, by the defendants, let to *Harwood*, under certain articles, for eleven years ; and *Harwood* had covenanted, at his own cost and charge, to repair, maintain, and keep the vessel, for tackle, rigging, &c. at all times, in good and sufficient repair.    This, however, was unknown to the *Riches*.    Lord *Mansfield*, in delivering the opinion of the court, says, " whoever supplies a ship with necessaries, has the personal security of the owners, whether they know of the supply, or not ; that the trust, among others, is to the owners ; and although there may be a private agreement between them and another, that he shall have the sole management of the ship, keep in repair, &c. yet, that shall not affect creditors, who are total strangers to the transaction."

In this opinion the other Judges severally concurred.

New trial to be granted.

*New-Haven,*
June, 1817.

Starr
*v.*
Knox.

But where a person, from the proper documents, appears to be the unconditional owner of a vessel, it must be considered as a declaration to the world, that he is the owner ; and it is a necessary consequence, that he becomes subject to all the liabilities of an owner : for no principle is more fully established, or more equitable, than that a man should be responsible according to the character he holds out to the world ; and that he shall not be permitted to protect himself from responsibility, by proving that he acted in a different character.

In this case, it appears, that the defendant, by the documentary evidence, was the unqualified owner of this vessel : as such, he was, unquestionably, liable to the demand of the plaintiff. He ought not now to be permitted to shew, that he was only a mortgagee, by evidence not accompanying his title, and which was unknown to the plaintiff ; for if this can be done, merchants abroad could not know for whom they furnished supplies ; and it might often be prevented in cases where it was necessary for the preservation of the vessel.

It is said, that the same difficulty occurs where there is an absolute sale, when a vessel is on a voyage. But this cannot be prevented, without an entire prohibition of such sale ; and though some inconvenience may arise from the practice, yet it is much more than counterbalanced by the benefit to commerce in permitting the sale of vessels at sea. But in the case of a mortgage, it will always be in the power of the mortgagee to make the nature of his title appear in connexion with the evidence of it.

I am of opinion that a new trial ought to be granted.

TRUMBULL, J. By the charge, in this case, two questions are submitted to the decision of the jury. One of them is this, whether *Knox*, the mortgagee, was, or was not, in possession of the vessel, at the time when the repairs were furnished by the plaintiffs.

Such a possession may be proved, either by direct testimony, or by evidence of his having exercised such acts of ownership, as are in law equivalent.

It appears, that the plaintiffs, in the court below, relied on the bill of sale and the register, as conclusive on this point ; and the charge is, in my opinion, correct, as to them.

It is conceded, that the register is not, of itself, conclusive

New-Haven,
June, 1817.

Starr
v.
Knox.

proof of ownership; nor can I conceive, that its being in fact on board, during the voyage, can make the least difference. It is a public document, appertaining to the vessel, and necessary to show her national character.

*Knox* was the sole owner in law, as he has testified in the register, though his title, like that of every mortgagee, was defeasible. He held out no false colours.

To render him liable in this action for repairs, it must appear that he had exercised some act of ownership, which would amount in law to the taking possession of the vessel, or had acknowledged himself to be in actual possession. Merely to suffer the mortgagor to continue in possession can incur no additional liability.

But sundry other facts appear on the motion, tending to show that he exercised other acts of ownership, by receiving freight, making insurances, &c.; and it is claimed, that *Butler* had the management of the vessel, by his permission. None of these matters are, indeed, stated with such accuracy and precision, as to evince to my mind, that the verdict was wrong, but only to show that the case was not thoroughly investigated, either as to the facts, or the points of law now claimed to arise upon them.

I concur, therefore, in advising a new trial, on this ground only, that the court submitted to the decision of the jury the question, respecting the possession of the mortgagee, without giving them any directions as to the law, upon the facts claimed to be proved, or the legal effect of any presumptive evidence of possession; and that the principle, involved in this decision, is of such importance to the commercial world, that it ought not to be settled without the most deliberate investigation.

EDMOND, J. dissented to, and SMITH, BRAINARD and BALDWIN, Js. concurred in, the opinion given by Ch. J. *Swift.*

HOSMER, J. The brig *Neptune* was conveyed to the defendant, by an absolute bill of sale. A separate defeasance was executed by him, shewing it to be a mortgage. At this time, the brig was at sea, on a voyage to *Demerara.* Some time afterwards, the defendant, on his personal oath, that he was sole owner of the vessel, obtained a register in his own

name. Notwithstanding this, *Normand Butler*, the mortgagor, was permitted to have the controul and use of the brig. Under the above register she sailed to *New-York*; and as supplies were necessary for a foreign voyage on which she was destined, they were there procured by *Butler*, as was contended, on the credit of the defendant. The brig, it was claimed, was represented by him, as belonging exclusively to the defendant; and in corroboration of his assertions, he appealed to the register on board.

The court, in their charge to the jury, remarked, that if the supplies were made on the credit of the defendant, it became a question whether *Butler* had authority to make a contract, which should be obligatory on him. Of this fact, they say, the register is not conclusive evidence. They then direct the jury, that if they should find the defendant was only mortgagee, not in possession of the vessel, by law he is not chargeable, unless he actually empowered *Butler* to make the contract in question. Pursuing the same idea, they thus express the final result of their charge. "If, on consideration of the evidence, you shall be of opinion, that the defendant actually gave such authority to *Butler*, and that *Butler* actually made the contract for the defendant, you will find for the plaintiffs; if otherwise, you will find for the defendant." If the defendant had omitted to take out a register, this direction to the jury would have been precisely correct. But, it is clear, beyond a question, that notwithstanding the court commenced by informing them, that the register was not conclusive evidence of *Butler's* authority, they end their charge by withdrawing it wholly from their consideration. Nothing short of its being an utter nullity as to all legal effect between the parties, can justify the putting it out of the enquiry, and resting the case entirely on the actual authority conferred on *Butler*.

In my judgment, the court were incorrect in two particulars. The register, connected with the facts contended for by the plaintiffs, estopped the defendant from denying, that he had imparted the authority in question, and so the jury should have been instructed. Besides, the jury should further have been informed, that if the facts contended for by the plaintiffs were true, the defendant, as mortgagee, was in the constructive possession of the brig.

*New-Haven,*
June, 1817.

Starr
*v.*
Knox.

*New-Haven,*
June, 1817.

Starr
*v.*
Knox.

1. By the law of the *United States*, the vendee of an *American* ship, who desires a register, must exhibit a bill of sale duly executed, to the collector. *Stat. U. S.* vol. 2. 147. He must swear, that he is sole owner of the ship ; or, if there are other owners, he must name them, and if resident within the *United States*, they must, within ninety days, transmit a like oath to the collector, or the certificate of registry granted, is void. *Stat. U. S.* vol. 2. 183. He must likewise give bond that the certificate of registry shall be solely used for the ship for which it is granted, and in the event of a sale, that it shall be returned to the collector's office. *Stat. U. S.* vol. 2. 137. All these pre-requisites are implied, of course, in the existence of that document.

I readily admit, that a ship's register is not conclusive evidence of owership in favour of the person who procured it ; whether it ought to be considered as presumptive proof of title, is, perhaps, not so decisively clear ; but this inquiry I decline, as being unnecessary in the present case. For the sake of argument, I concede, that a ship's register furnishes no proof in behalf of the registered owner. But, does it supply no evidence against the person who procured it ? It is his personal act, containing a solemn declaration to all mankind, that he is the owner of the ship registered in his name. Connect with this idea the following facts, applicable to the case under discussion ; that the vessel, with the knowledge and approbation of the defendant, sailed under this document ; that he has not parted with his property since he obtained the register ; that, with his permission, *Butler* navigated the brig ; and that the plaintiffs, who supplied the necessaries for a foreign voyage, had no knowledge concerning the *Neptune*, except what they derived from the register, and the asseverations of *Butler*. Is not, then, the defendant estopped from denying, that he is the owner of the brig ?

The question, though not of frequent occurrence, seems to have been decided in several cases. The result of them is well expressed in the following words. " Registers are not evidence to fix the parties therein named, as owners, unless they are shewn to have been made by their assent, or recognized by them." See *Phill. Ev.* 308. *Tinkler et al.* v. *Walpole*, 14 *East*, 226. The necessary implication is, that with this assent and recognition, they, as against the persons

*New-Haven*,
June, 1817.

Starr
*v.*
Knox.

procuring them, are proof of ownership. The public declaration of a fact by a register, is, at least, equivalent, in point of legal effect, to any other declaration equally explicit. If a man live with a woman to whom he is not married, and suffer her to pass in the world as his wife, he will be responsible for such contracts made by her, as would be binding on him, if made by a woman to whom he was actually married. *Watson* v. *Threlkeld*, 2 *Esp. Ca.* 637. So if he permit a person to announce him to the world as a co-partner, he shall be considered in that character. *Waugh* v. *Carver*, 2 *H. Black.* 246, 247. *A fortiori*, shall he be bound for the contracts made by an assumed wife or co-partner, whom he has expressly declared to stand in that connexion with him. On the same principle, if the defendant had either orally, or by letter, informed a merchant of *New-York*, in particular, or the merchants generally, that he was the owner of the brig *Neptune*, he could not be permitted to recede from this declaration. He is, *quoad* such persons, the owner of the vessel, and responsible in that character. What can be more equitable than this doctrine? What more promotive of good faith, or preventive of fraud?

Now, the register of the *Neptune* contained the declaration of the defendant, made on solemn oath, that he was the sole owner of the brig; and this he publicly announced to the world. Shall he be permitted to defend himself against the demand for supplies to the brig, made in confidence of the truth of his declaration on oath? I cannot bring my mind to admit the validity of a defence, so manifestly contrary to the first principles of natural justice, and so opposite to the analogy of established cases.

The decision in *Williams* and *Sanger* in this Court, ratifies principles, confirmatory of the opinion I have expressed. "The papers," say the Court, "under which a vessel sails, must always determine her ownership; a stranger can rely on nothing else; these, supported by the declaration of the master, are letters of credit. They are drafts, which for necessaries he may safely trust."

I readily admit, that the register of a ship, is not any evidence of ownership, at any given time posterior to the taking it out. The registered owner may have sold the ship, and a register in the name of the vendee may not have been procured. But, the person who charges the owner for necessary

Starr
*v.*
Knox.

supplies has a right to confide in the veracity of the regis-
ter ; and may rest assured, that unless there has been a sub-
sequent disposition of the property, the person named in the
register is owner still.   It is true, he may be deceived in his
expectations.   There may have been a sale of the property,
and change of the register.   In a case thus circumstanced,
the less good must give way to the greater ; the sale of ships
must not be obstructed, as it undoubtedly would be, if the
vendor were to remain liable to demands, because his vendee
has omitted to take out a register in his own name.

If it be once established, that the register of a ship is not,
as against the registered owner, proof of what it purports, a
fatal stab will be given to that credit which is indispensable
to the success of mercantile adventures.   No man in a for-
eign country, or at any considerable distance from the place
where she belongs, will trust a ship on the foundation of pa-
pers which prove nothing.   And what is the essential differ-
ence between no register, and a register which evinces no
fact ?

While the principles for which I contend, furnish a shield
against the perpetration of fraud, they will not, in the minu-
test degree, restrain the mortgaging of ships.   The mort-
gage may be indorsed on the register of the mortgagor, and
then appearances will correspond with realities.   If the mort-
gagor is permitted to navigate the ship, the register will
evince the precise condition of the property.   *Hodgson* v.
*Butts,* 3 *Cranch,* 140.

The grand object of the acts of registry is, " to advance
the public policy of the state, by the notoriety of property,
obtained through the medium of a public register."   It is
difficult to see how this object would be attained, if this docu-
ment were not evidence, even *prima facie,* against the person
named in it.   The supposition, that in favour of the *United
States,* it is proof of ownership, but in behalf of individuals,
that it proves nothing, is founded on a distinction too attenu-
ated for my optics to discern.

2. It is admitted, that if the defendant had taken the actual
occupancy of the brig, he would be liable for all necessary
supplies.   He would then be the mortgagee in possession.   I
am of opinion, that to all legal intents, if the facts contended
for by the plaintiffs were established, he is to be viewed in
that character.   That the defendant has a right derived from

*New-Haven,*
June, 1817.

Starr
*v.*
Knox.

the mortgage to possess the brig, is not susceptible of dispute. It is equally unquestionable, that if he would continue his lien upon her, it was necessary that he should take possession. Although a ship at sea may be mortgaged, yet the mortgagee, so soon as may be, on her return, must take possession of her, before the mortgage is complete. This act is indispensable to the validity of his title. *Ryall* v. *Rowles,* 1 *Ves.* 360. *et. seq. Cooke's Bankrupt Law,* 339, 357. *Newland on Contr.* 376. *Sturtevant & al.* v. *Ballard,* 9 *Johns. Rep.* 340. *Ex parte Matthews,* 2 *Ves.* 272. *Russel & al.* v. *Hammond & al.* 1 *Atk.* 16. *Atkinson* v. *Maling,* 2 *Term Rep.* 462. *Portland Bank* v. *Stubbs & al.* 6 *Mass. Rep.* 422.

The essence of possession is the assuming the controul and disposition of the property. This may be done in various ways ; but the taking out a register is equivalent to all others, and can only be contravened, from its appearing, that the mortgagor occupied in defiance of the mortgagee's claim. The brig, in this case, though subject to the direction of the mortgagor, in some capacity, sailed under the register procured by the defendant. Evidence was exhibited to the jury tending to prove, that the register was in the actual possession of *Butler,* who averred its authenticity, and declared that *Knox* was the sole owner of the brig. In my judgment, the preceding facts, more especially, when connected with the asseverations of *Butler,* that the supplies must be charged to the defendant, are decisive to show, that *Knox* was in possession. The most explicit declarations of *Butler* cannot be more convincing ; and the presumption of possession arising from the taking out the register, is corroborated and confirmed. The assertions and whole conduct of *Butler* evince the nature of his possession, and that he occupied the brig, not by virtue of his right as mortgagor, but by the actual permission of the registered owner. The registered owner, then, was in possession. *Jackson* v. *Vredenbergh,* 1 *Johns. Rep.* 159.

If the defendant is considered as sole owner of the brig, or as the mortgagee in possession, he is bound for all necessary supplies furnished on request of his agent. Any private understanding between the defendant and *Butler,* can make no difference in the case. *Waugh* v. *Carver, H. Black.* 246. The confiding the care and management of the brig to *But-*

ler, constituted him the agent of the defendant. *Rich* v. *Coe, Cowp.* 636. *Williams* v. *Sanger, ubi sup. Westerdell* v. *Dale,* 7 *Term Rep.* 302. This point need not be further pursued, for a part of the supplies were delivered at the request of the master of the brig.

The principles advanced, founded in the highest equity, are indispensably requisite to prevent the perpetration of fraud. Under the cover of the doctrine contended for by the defendant, a confederacy may exist between the mortgagor and mortgagee, almost beyond the possibility of detection, and infinitely detrimental to the commercial world. False colours may be displayed, and a hopeless bankrupt be enabled, by a credit derived from his mortgagee, to defraud mankind.

GOULD, J. From the best consideration I have been able to give the case, I am satisfied, that the direction to the jury was right. The general doctrine, that, in ordinary cases, a ship-owner is liable for supplies obtained upon his credit, by the master, is not now in question. For the court and counsel appear satisfied with the rule, (notwithstanding the doubt expressed about it in *Westerdell* v. *Dale,*) that a mortgagee, out of possession, is, *prima facie,* at least, not regarded as owner, within the scope of that general doctrine, and of course, not liable, as such : and in the present case, it is ascertained, that the defendant was mortgagee out of possession ; that point having been left to the jury, and found for him. It has been suggested, indeed, that the defendant was once constructively in possession, by receiving freight, in part payment of his demand in the year 1806 ; and that the jury ought to have been so instructed. To this it would be a sufficient reply, that the point was not made at the trial. But if the act of receiving freight were to be considered, as a virtual possession ; still, that possession terminated with the act, and ceased, of course, several years before the voyage commenced, in which the advances were made by the plaintiffs. And it can make no difference, whether the defendant once had possession for a moment, and immediately abandoned it, or whether he never had it at all. But further : the freight received was earned for, and at the risk of *Butler.* If it had been entirely lost, the loss would have been *his,* and not the defendant's : and it is, surely, immaterial, whether it was received through *Butler's* hands, or those

*New-Haven,*
June, 1817.

Starr
*v.*
Knox,

of the freighters. But it does not appear, at all, from whom, or in what way, it was received.

Upon a view of the whole case, it appears to me, I confess, that no mortgagee of a vessel could, with a prudent and proper regard to his own security, have done less, to bring himself under the liabilities of a general owner, than has been done by the defendant in the present case. As the facts must be taken to be, upon this motion, he took merely the legal title to the brig, by way of mortgage security—took out a register, in common form, as evidence of her *American* character, which might be essential to the stability of that security—and had her insured for a time, to guard it against the common hazards, to which such property is exposed: but he never had possession of her, for an hour; he had no controul over, or concern in, her employment; he was not interested, either in her cargoes, or her earnings; he neither furnished her outfits, appointed her masters, nor paid her crews: but left her, for a series of years, from the time of taking the mortgage, to that of her final loss, in the sole possession, and entirely under the controul, of the mortgagor; who continued, through that whole period, to employ her, precisely as he had done before—that is, precisely as he pleased—without any interruption, superintendence, or interference, on the part of the defendant. The case has been argued for the plaintiffs, as if the defendant had put *Butler* into possession of the brig, and actually *sent* her to sea, with the register on board: and it is, indeed, difficult to conceive, how he could have *sent* her abroad, upon a voyage, without being, in some way, concerned in it. But he gave possession to *Butler*, no otherwise, than by never taking possession himself; and he sent the brig to sea, in no other sense, than that he did not *prevent* her going. He took a transfer of the legal title, merely by way of security for a debt; but was, in every other respect, practically a stranger to the vessel, as he was, in all respects, to the employment of her. If, upon this state of facts, the defendant can be subjected, it must be upon the broad ground, that it is impossible, in any case whatever, for a creditor to hold a mortgage security upon a ship, accompanied with the usual and proper evidence of her national character, without either laying her up to decay, or exposing himself, against his will, to all the liabilities of a navigating owner: a doctrine so

*New-Haven,*
June, 1817.

Starr
*v.*
Knox.

unreasonable in itself, and so inconsistent with common convenience, and commercial policy, that nothing short of the most direct and decisive authority could induce me to assent to it.   And no such authority, I trust, exists.

To this argument *ab inconvenienti* it is replied, that the defendant should have indorsed the defeasance to the bill of sale upon the register, for the purpose of giving notice to third persons.   I might ask, in the first place, what law, or usage, requires this to be done ?  But, at any rate, it is sufficient to say, that such an indorsement would answer no useful purpose whatever : since it could furnish no evidence of the defendant's being in, or out of, possession—of his being interested, or uninterested, in the voyage, the earnings, or the employment of the vessel—or, of the acting master's being, or not being, his agent,   The register, thus indorsed, would, therefore, on principle, be as conclusive, as if no such indorsement were made.   Of course, if it is conclusive in either case, it must be so in both.

Whether, after a lapse of four years, or more, during which a third person was constantly in possession, the register was proper evidence, *at all*, against the defendant, is not now the subject of inquiry.   It has been admitted, as evidence, without objection ; and the plaintiffs have had the advantage of it.

We come, then, to the main, and only material, question, which is, whether, under the circumstances of this case, the register is, as to third persons, *conclusive* evidence, that the defendant was owner, in such a sense, as to come within the general rule of liability for supplies, and that *Butler* had authority to bind him, in that character ?  It is admitted, that the register would not be conclusive, if the brig had not sailed, with the defendant's *consent.*  What this consent was, has been already explained ; but independently of this explanation, the admission virtually concedes away, in my view, the whole ground of claim.   For if the effect of the register is not—as it is properly admitted not to be—like that of a negotiable instrument, which, at all events, binds those, who have put their names upon it, in favour of a *bona fide* holder, by regular transfer ; it follows, that third persons, who trust to the former, do it at their own risk.   For how could the secret fact of another's having assented to the voyage, influence *them ?*  The register could furnish no proof of that fact.

And in this case, the evidence, upon which the plaintiffs relied, of the defendant's ownership, of his interest in the voyage or earnings, and of *Butler's* agency, must have been precisely the same, whether the defendant had *assented* to the voyage, or not. Their right of recovery ought, therefore, to be the same, in the one case, as in the other ; *i. e.* it ought to depend upon the *fact* of the defendant's being the responsible owner, and of *Butler's* being his agent.

In no one of the cases, cited for the plaintiffs, is the rule, upon which they rely, the ground of decision ; and in no one of them, except that of *Williams* v. *Sanger,* is there so much as a *dictum* to be found in favour of it—and in that case, there is nothing more. They have all been decided upon grounds entirely foreign to that, which is now assumed in support of the motion. As far as I am informed, no court has ever determined, nor does any decision, which has been produced, imply, that a register is, under any circumstances, conclusive to any purpose whatever, that can affect the rights of these parties : but there are highly respectable authorities, which, I think, plainly establish the contrary.

The case of *Cary* v. *White* was determined upon the ground, that the defendant's testator, who was the *general* owner, not only was interested in the voyage, (he being entitled, under the charter-party, to the freight) ; but, that he appointed the master, was to pay the seamen's wages, and to furnish the ship with necessaries. In *Rich* v. *Coe,* the defendant, who was *general* owner, was *benefited* by the employment of the ship, for which he received rent ; and the court considered the master as his agent. *Stokes* v. *Carne* was decided expressly upon the ground, that the defendants, who were *general* owners, were entitled to the freight ; and the other point, ruled in that case, by Lord *Ellenborough, viz.* that the register, obtained upon the oath of one of the defendants, was *prima facie* evidence against all of them, (though, for the sake of the present argument, it might safely be admitted to be law,) has been since over-ruled by himself and the whole court of *B. K.* in *Tinkler* v. *Walpole,* 14 *East,* 226. In *Westerdell* v. *Dale,* the supplies were furnished, upon the personal application of *Wharton,* who was a *joint general* owner, with the defendant : and the case was determined upon the principle, that the act of one of two *partners,* in relation to the partnership-property, is, in law, the act of

both. 8 *East,* 13. The defendant in that case was, moreover, entitled, as two of the judges declare, to part of the profits of the ship. In *Trewhilla* v. *Rowe,* the supplies were ordered by the documentary owner in *person,* (the defendant being a subsequent purchaser ;) and the court therefore held, that the former only was chargeable. *Scott* v. *Stanley* is so entirely foreign to every question, arising in the present case, that it would be a mere waste of time, to point out all the particulars, in which they are distinguishable. It is sufficient to say, that the defendants in that case, by taking *benefit* of the contract, made by *Taylor,* adopted it, as their own. In this whole list of cases, cited for the plaintiffs, there is not one, in which the principle, for which they contend, is either established, or in any way, directly or tacitly recognized. In *Williams* v. *Sanger,* determined in this court, the defendant was *joint general* owner with *Kelly,* in whose service the vessel was employed ; and was not only bound by the latter's acts, as a partner, but was, by the terms of the charter-party, entitled to freight. In *Tinkler* v. *Walpole* it was decided, merely, that a register, obtained upon the oath of third persons, and naming the defendant, as part owner, is not even *prima facie* evidence against him : and the expression, imputed to Lord *Ellenborough,* that " if it had appeared, that the defendant had, by any act of his own, recognised the register, he would have been liable to all the consequences, as a part owner," is, if correctly reported, effectually done away, by what he afterwards declares, in the same case ; *viz.* that he *reserves* his opinion, as to " what conclusions may be drawn from them," (ship-registers,) " *if adopted* by the parties, therein named."

Thus stand the authorities, adduced in support of the motion : and they certainly prove no one contested point in the case. It was urged, indeed, for the purpose of showing one point of resemblance between some of those cases and the present, that the defendant had the actual benefit of the repairs bestowed upon the brig : as they were necessary to her preservation. He might have been benefited, it is true, in certain events, which might have happened ; and the same thing may be said of any other of *Butler's* creditors. But the claim, that the defendant was, in fact, benefited, has no foundation in the present motion. And if it had, still the question, in respect to the *responsibility of his situation,* as exist-

*New-Haven,*
June, 1817.

Starr
*v.*
Knox.

ing in fact, or as established by the register, would be the same, as it now is; and the determination of this question must ultimately decide the motion. Indeed, if the defendant is to be subjected, by reason of a supposed benefit, accruing to himself from the repairs; every mortgagee of a house, or even of land, ought, upon the same principle, to be liable for repairs, procured upon his credit, though without his authority, by the mortgagor in possession.

It is to be recollected, that, to sustain the present motion, the register must be conclusive, not only that the defendant was *owner,* in such a sense, as to come within the general rule, subjecting ship-owners, upon the contracts of the master—but of the additional fact, that *Butler* was his authorized *agent.* For a mere stranger, though in possession of a ship and her papers, confessedly cannot bind the owner. All the cases, from the time of Lord *Holt,* to the present time, show decisively, that, in order to charge the owner, the relation of principal and agent must subsist between himself and the acting master. The cases of *Boson* v. *Sanford,* 2 *Salk.* 440. *Spearing* v. *Degrave,* 2 *Vern.* 643. *Cary* v. *White,* 5 *Bro. P. C.* 325. (*Toml.* edit.) *Parish* v. *Crawford,* 2 *Stra.* 1251. *Rich* v. *Coe, Cowp.* 636. *Frazer* v. *Marsh,* 2 *Campb.* 517. S. C. 13 *East,* 238. and *Hussey* v. *Allen,* 6 *Mass. Rep.* 163., are all express and full upon this point.

Now, the jury have found, that *Butler* was not, in fact, the defendant's agent; but it is objected, that the register precludes the defendant from making this defence. The objection, however, cannot, upon any supposable principle, be a valid one, unless the defence is contradictory to something expressed or implied in the register: for it would be a strange doctrine, that a party should be estopped, by any document, however solemn, to aver what is *not inconsistent* with the document itself. In the nature of the case, then, what possible evidence could the register furnish to third persons, of *Butler's* being the defendant's agent? *Butler* was not the master, named in it; and there was no documentary evidence of a change of masters. How, then, could the register furnish any proof, that *Butler* was not a pirate, or a trespasser? or, that the defendant was not, as he is proved, in fact, to have been, a mortgagee out of possession—a stranger to the employment of the brig? That document certainly did not purport to confer any authority upon *Butler;*

and if the plaintiffs trusted to it, as proof of his authority, they trusted to what they knew, or should have known, afforded no evidence of the fact—and therefore, trusted at their peril. The consequence is, that their right of recovery must depend upon the question, whether *Butler,* as master, was *actually* the defendant's agent? And the jury have found, that he was not. Indeed, if upon any principle, the register is conclusive of *Butler's* authority to bind the defendant, for the supplies in question; why should not the registered title of the mortgagee of a house, be equally conclusive of the authority of the mortgagor in possession, to subject *him* for repairs?

Without inquiring, under what circumstances, or to what purposes, a ship's register may be *prima facie* evidence, I take the rule to be, that it can never be *conclusive* either of the ownership, or of the acting master's authority to bind the party, in whose name it is made out. And with the single exception of a *gratis* observation in the very able opinion, delivered in *Williams* v. *Sanger,* all the authorities, both *English* and *American,* which bear at all upon the point, concur, I think, to prove, that such is the true rule.

But, it is asked, shall not a man, who, by exposing a sign, or publishing an advertisement, or by any similar means, even falsely holds himself out to the world, as the partner, husband, or employer of another, or as sustaining any other responsible relation, be answerable to third persons, in the character which he has thus assumed? Undoubtedly: and, for this plain reason, that he holds out the evidence of that character, for the *very purpose* of inducing a belief in the public, that he actually sustains it—and because the means, he employs for that purpose, are adapted to the end. But " the register acts," says Lord *Ellenborough,* in answer to the same argument, in *Frazer* v. *Marsh,* 13 *East,* 339., " were passed *diverso intuitu.*" Registers are not required by the law, nor taken out by individuals, for the *purpose* of furnishing evidence of title or possession in the owner, or agency in the acting master ; but merely to prove the *national character* of the ship. The object of the law is to ascertain, not whether *A.* or *B.* is owner, nor whether *C.* or *D.* is master ; but merely whether the ship is *American* or *foreign.* 7 *Johns. Rep.* 308. Hence, he who confides in the register, as evidence of either of the two former facts, trusts to that,

New-Haven,
June, 1817.

Starr
v.
Knox.

which was never designed, by the law, or the party, as evidence of either; and therefore, does it at his peril. Such appears clearly to be the rule, even in *England*, where a compliance with the register acts is necessary (as it is not here,) to the *consummation* of a transfer of the title. The words of *Bayley*, J. in *M'Iver* v. *Humble*, 16 *East*, 176, are very strong and pointed to this purpose. " It is said," he observes, " that we must look to the register, to see who are the legal owners. But the object of the registry-acts was to inform the *government*, whether the owners were *British*"— " the object was *not to inform the tradesman, to whom he should give credit*." The cases of *Young* v. *Brander*, and *Frazer* v. *Marsh*, both shew, that a person may be deceived, as to the true owner, by looking merely to the registers; *and that, therefore, before trust is given, it is proper for the tradesman to enquire further*. These remarks are in accordance with the whole current of authorities, which apply at all to the question. In *Fraser* v. *Hopkins*, 2 *Taun*. 5. which was an action like the present, the court held, that the entry in the custom-house books, of the transfer of a vessel, to a particular person, " is not even *prima facie* evidence for a stranger to charge that person, as owner, unless the entry be shown to be made by the *authority* of the person named in it." The only inference, that can be deduced from this determination, in favour of the plaintiffs, is, that, when the entry is made by the " authority" of the person named in it, it might, perhaps, be *prima facie* evidence against him. Admitting the inference to be law, (for it does not affect the present case,) the observation of Lord *Mansfield*, Ch. J. in relation to a ship's register, is very material : " The entry," he observes, " is evidence of the registration ; it is not evidence of the transaction of sale"—" *nor was it ever supposed, that a register was of itself evidence*," (*i. e*. of title.) And yet, the register was the only evidence, on which the present plaintiffs relied, except, as they claim, the verbal declarations of *Butler* ; and it will be agreed, that so far as they depended upon those declarations, they did it at their own risk. In *Frazer* v. *Marsh*, 13 *East*, 238. the defendant, who was the *registered owner*, had chartered the ship to the master, at a rent for a certain number of voyages. The plaintiff furnished stores for her, upon the application of the master ; and the court of *B. R.* held, that the defendant was not liable

*New-Haven,*
June, 1817.

Starr
*v.*
Knox.

for the stores. Whether the register was shown to the plaintiff, before the stores were furnished, does not appear : but Lord *Ellenborough* observes, that, " to say, that the *registered owner,* who divests himself, by the charter-party, of all controul and possession of the vessel, for the time being, in favour of another, who has all the use and benefit of it, is still liable for stores furnished to the vessel, by order of the captain, during the time, would be pushing the effect of those acts (the register-acts) much too far." This case, I admit, is not directly in point ; but the doctrine, advanced in it, certainly is. The defendant in the present case, it is true, cannot be said to have " *divested* himself of all controul and possession of the vessel ;" because a fact, at least equally strong in his favour, rendered it impossible, that he should have done so : *viz.* that he never had the controul or possession of her.

The case of *Hussey* v. *Allen & al.* 6 *Mass. Rep.* 163. goes even beyond the length of the present defence. In that case, the defendants were general owners ; the register was in their names ; the voyage was theirs, and for their sole benefit ; and the master, who procured the supplies, was appointed by them. But, as they had sold the vessel while abroad, before the supplies were furnished ; they were holden not liable. An attempt has been made, to distinguish that case from the present, upon the ground, that, after the transfer, the vessel no longer sailed in their names, *with their consent*—their apparent ownership, during the residue of the voyage, being unavoidable. But the evidence of their ownership, so far as depended upon the register, was precisely the same, as if there had been no transfer ; and this evidence, such as it is, they voluntarily sent abroad. And the case turned entirely upon the question, whether the master, at the time of procuring the supplies, was *actually* their agent, or not.

But common convenience, it is said, requires, that owners should be allowed to sell a vessel afloat, without subjecting themselves for subsequent supplies. The same principle of convenience as plainly requires, that a creditor should be permitted to take a mortgage security upon a ship, without incurring the indefinite responsibilities, to which the mortgagor, when left in possession, may choose to subject him. The case of *Hussey* v. *Allen,* if law, (and I know of no

case or principle opposed to it,) certainly decides the present. It proves, incontestibly, that those, who trust to the register, do it at their own risk. And if third persons are unwilling to incur this hazard, they must require a letter of credit, or some other satisfactory evidence, or refuse to make advances.

The case of *Young* v. *Brander*, 8 *East*, 10. in which the register continued in the defendant's name, after a sale to another, proceeded upon the same principle. The court of *B. R.* held the defendant clearly not liable : and Lord *Ellenborough*, in giving the opinion of the court, observes, " It is true, that the owners of a ship are liable for repairs, ordered *for them*, or for *their benefit*, by *their* master ; but it was never heard of, that if a *stranger* ordered repairs for another's ship, the owner was liable for such repairs." It is to no purpose to say, that the custom-house documents, in that case, continued in the defendant's name, through the neglect of the vendee. That circumstance is not even adverted to, in the opinion of the court. The judgment proceeded upon the general ground, which I am endeavouring to maintain : and if the effect of those documents were such, as is now ascribed to them ; it would have been the defendant's duty, in that case, to see, that the proper entry of transfer was made, or to indemnify the plaintiff, who was deceived by the want of it.

The case of *Pirie* v. *Anderson*, 4 *Taun.* 652. has a strong, and I think, a decisive bearing upon the general question. That was an action on a policy of insurance, in which the interest was alleged to be in *A. B.* and *C.* : and to prove their interest, the original register, purporting to have been made out upon the oaths of *all of them*, was produced ; but the affidavit, upon which the register purported to have been made, was not produced. Here, then, the documentary evidence, adduced on the trial, to establish the fact of interest, was precisely the same, as was exhibited, in the present case, to the plaintiffs : and the court determined, that it was not even admissible. The evidence in that case, it is true, was offered in *behalf* of the documentary owners, and not, as in the present case, *against* them. But the court decided, exclusively, upon the general ground, that the mere register is never evidence of title ; and held, that " property in a ship must be proved by *possession* in the plaintiff, his vendors, or bailees, accompanied with a certificate of registry." " There

can be no doubt," says *Mansfield,* Ch. J. " that the register is not legal evidence of ownership." The reason is, that the register was never intended, and cannot, therefore, be regarded as evidence of title. In the case last cited, *Gibbs,* J. says, " It has been asked, how property in a ship is to be proved? How was it proved, before the statute? By proving actual possession in the plaintiff, or in those, to whom, &c. accompanied with the evidence of the registry, *in order to make the other evidence admissible."* But it is not pretended, that, under the laws of the *U. S.* the register is necessary even for that purpose. Non-compliance with the register-act forfeits the *American* character of the vessel; but does not affect the title. Hence, in *Wendover* v. *Hogeboom,* 7 *Johns. Rep.* 308., it was determined, that the title to a ship may pass—and, of course, be proved—by mere delivery, under a parol contract, without even a bill of sale. In *Robertson* v. *French,* 4 *East,* 130., the same rule is laid down, as to the regular mode of proving title to a ship, (*viz.* by possession,) as in *Pirie* v. *Anderson.* I have referred to the three last cases, not as comparing with the present, in point of precedent, but for the purpose of showing that the ownership of a vessel is to be proved precisely like that of any other personal chattel; that the register is not the ordinary, nor proper, evidence of title, and therefore, not that kind of evidence, upon which third persons are expected to rely, or upon which they can rely, except at their own hazard.

Upon the whole, every view, which I have been able to take of the case, confirms me in the opinion, that the motion ought not to prevail.

GODDARD, J. gave no opinion, having been concerned as counsel in a cause connected with this.

New trial to be granted.