## No. 1.

### LOCHTE & CORDES *v.* JEAN M. GÉLÉ.

1. Where a party permits his name to be affixed over the place of business of another, he holds himself out to the world as proprietor, and persons dealing with the true owner, not aware of his interest, and giving credit to the apparent owner, can hold the latter.

2. Men have the right to suppose that their neighbors will speak and act the truth, and to transact their business accordingly.

Lochte & Cordes vs. Gélé.

3. Representations, binding, by way of estoppel, may be by actions as well as words.
4. It is a reasonable presumption that property is in the use of its owner, and that when one purchases property, adapted to a special use, he does so with a view to applying it to such special use in his own interest.
5. When a person conducts a certain business, to which the services of clerks and of a superintendent or manager is essential, and he does not himself act as such manager, there is a representation that the parties actually engaged in the performance of these essential duties are his agents with necessary powers.
6. A person, however, who gives the exclusive credit to a disclosed agent, apparent or real, cannot hold the principal.
7. The manner of charging upon the books of a merchant, in such a case as this, furnishes *prima facie* evidence as to the placing of the credit.

*Appeal from Second Judicial District Court.   Pardee, Judge.*

*E. N. Whittemore* for plaintiffs, appellant.

*J. D. Coleman* for defendant.

McGLOIN, J.—Plaintiffs sue defendant for a balance upon a bill of merchandise sold and delivered.   The facts are as follows: One John Gross was for a long period of time owner of certain stalls or stands, in the Magazine Market of this city, at which he sold coffee, milk and chocolate, and other cooked food.   During this time he was a customer of plaintiffs, who were wholesale grocers.   On June 3d, 1879, by authentic act, for three thousand dollars, recited as paid cash, said Gross sold out his said coffee stands, and all the trade, custom and patronage connected therewith, to defendant.   This price, however, was not paid in cash, as recited, twenty-four hundred dollars thereof being applied to the extinguishment of a debt due Gélé, the balance of six hundred dollars being all the cash actually paid.   Gross was very much indebted, and the purpose of this transaction, at least on his part, seems to have been to relieve himself from the pressure of his creditors.   When this sale was made, Gross, it appears, was to continue the business for his own account, Gélé binding him to purchase

all the milk used from him (Gélé), he being by occupation a milk or dairy man.  Gross, however, whose name had been heretofore over these stands, asked Gélé to allow him to place thereafter his (Gélé's) name over the stall in place of the name John Gross.  This Gélé agreed to do, and the change was made at Gélé's expense.  The plaintiffs heard of this sale shortly after its occurrence, and their salesman and employee saw the new sign, which was sufficiently conspicuous to be seen from the street cars as they passed the market.  This salesman also swears that he made, about this time, inquiries as to Gélé's solvency, and received satisfactory replies.

On July 1st, 1879, Gross called at plaintiffs' store to purchase supplies for the stands, spoke of the sale, and told plaintiffs he was buying for Gélé, and to make out the bills hereafter in his name.  This request was complied with, and a new account was opened upon the books of Lochte & Cordes, in the name of Jean M. Gélé.  These facts we consider sufficient to hold defendant liable for the bill sued upon.

The law is well settled, that persons are held bound by the representations, express or implied, they make to others when acted upon by those to whom they have been made, and when the parties so acting would be injured by the withdrawal or repudiation thereof.  Persons have the right to presume that their fellows will speak and act the truth, and to regulate their conduct accordingly, and, when they have so done, they will be protected.  It would certainly be detrimental to the public morals and the honor of commerce, and introduce inconvenience and confusion in all business relations, if the law did not favor the implied confidence of men in each other's veracity and integrity.

Nor need representations, to be governed by these principles, be spoken or written ; but they may be derived from actions, for these influence the judgment and conduct of men as readily as words.  Indeed, in many respects, as confessions or declarations, they are more satisfactory and convincing

than language itself, which is so often lightly and thought-lessly employed.

It is a reasonable presumption, in default of contrary notice or circumstances, that property in employment, is being used by the owner. It is also a legitimate supposition when prop-erty, adapted and devoted to a particular use, is purchased, that the motive of the person acquiring is to continue it in the same employment for his own benefit. While these presump-tions are not conclusive, or even sufficient of themselves to determine issues such as those presented in this case, they are introductory to, and supportive of, others, which do determine them. They were considerations which might influence plain-tiffs, in the matter of giving credit, and, as such, they bear upon the question of recourse, and affect the burden of proof.

It is a custom prevailing in all commercial communities for merchants and others transacting any business to make use of signs, giving the name of the proprietor, and the character of the business conducted in the store, shop or office upon which such signs are placed. When, therefore, a name or names appear upon such a sign, over any place of business, it is a declaration that the business thereat conducted, is for the benefit of the person or persons whose name or names are so used. When, therefore, Gélé placed his name over these stands, he declared to the world, what they had reason before to suppose, by reason of his purchase, that the business being conducted thereat was in his interest, and for his individual account. As this business needed employees for its transac-tion, there was the additional declaration that the persons therein engaged were his servants, authorized to bind him to the extent that such employees, in such trade, usually bind their principals. Civil Code, Art. 3000; Story on Agency, § 106. Still further, as such business needed a manager, and a person to buy and sell, and, as Gélé did not perform these duties himself, there was a declaration that the employee actu-ally performing these essential services was his agent for these purposes. As the evidence shows that Gross, in this case, did

so manage the business, and make purchases, and that Gélé neither did these things himself, nor furnished any person other than Gross for that purpose, Gross, therefore, stood the declared agent of Gélé, with all necessary powers.

Lochte & Cordes knowing Gélé's purchase, cognizant of the change in the signs, and the continuance of the business under the management of Gross, had the right to consider Gélé the principal and Gross the agent, with proper authority. They had, also, the right to take Gross' statement and directions as to the manner of charging the goods, and these were binding upon Gélé, in default of notice to Lochte & Cordes as to the true condition of affairs. These principles are well supported by authorities, and have been applied to contracts of every character. A person representing himself as a partner in a firm will be bound as such to persons dealing with the firm, believing him to be a member. Story on Partnerships, secs. 36, 49, 54, 64, 65; 1 Greenleaf on Evidence, sec. 207; 1 Parsons on Contracts, 145; 3 Kent's Com., side pp. 31 to 33; Richardson v. Debuys & Longer, 4 N. S. 127; Lee v. Bullard et al., 3 An. 462; Grieff & Byrnes v. Boudousquie & Fortier, 18 La. An. 631; 9 Johnston, 489; 1 Smith's Leading Cases, 981; Kell v. Nainby, 10 Barn & Creswell, 17. A person permitting his name to figure upon the books of a corporation as owner of its stock, although in fact not such owner, is held to all the responsibilities of an owner. Pullman v. Upton, 96 U. S. 328; Nat. Bk. v. Case, 99 U. S. 631. Factors and similar agents can sell as their own, property confided to them, in the same manner and with the same effect as to third persons, as though it belonged to them in fact. Delaume Bros. v. Chaffraix & Agar, lately decided. So, as more proximate to the case at bar, where a mere mortgagee held himself out as the owner of a vessel, he was held liable as such. Starr v. Knox, 2 Conn. 215; Champlin v. Butler, 18 Johnston, 169. So, also, where defendant allowed his name to figure as proprietor upon a cart, and the place of business to which it belonged, he was held liable for damages caused by the careless driving thereof. Stables v.

Ely, 1 Carr & Payne (11 E. C. L. R.) 497. Such illustrations might be indefinitely multiplied, and they are and would be all based upon, and illustrative of, the same principle.

It is true that plaintiffs, dealing with Gross, despite these circumstances, might have given exclusive credit to him, and not to Gélé. In such event, not having been misled by the conduct of defendant, they could urge no complaint against him, and advance no reason for holding him liable. Were such *exclusive* credit given to Gross, considering him either as the real or known principal, as against one only apparent, or as an agent of Gélé, the recourse would be against Gross alone. Thompson *v.* Davenport, 9 B. and Cressw., 78, 88, 98; Addison *v.* Gaudesequi, 4 Taunt. 574; Rankin *v.* Deforest, 18 Barb. 143; Story on Agency, § 447.

In this case, however, we believe that the sales were made upon the credit of Gélé. They were so charged upon plaintiffs' books, and this, although not conclusive, is presumptive evidence of this intention or purpose on the part of the seller. Story on Agency, § 289. That these entries correctly designate the placing of the credit, is shown by the testimony in the case, and the circumstances thereof. The correctness of the bill sued upon is established, except six dollars worth of whisky, which plaintiffs seem to concede should be stricken off. The true balance due is, therefore, $886 37, for which, in our opinion, there should be judgment.

Judgment reversed, and now rendered for plaintiffs for $886 37.

Rehearing refused.