SAMUEL BRABIN v. MILTON A. HYDE.

To render valid a contract of purchase and sale of personal property amounting
to more than fifty dollars, something more than mere words must pass be-
tween the parties.

Under the statute for the prevention of frauds and perjuries, there must have
occurred one of the three acts mentioned therein expressing the concurrence
of both parties; as,

1. The memorandum, if in writing, must be signed by both parties; or,

2. If the delivery of the goods, in whole or in part, be relied upon, it must
have been made by the one and accepted by the other of the parties;

3. Or if it be payment, in whole or in part, of the consideration or purchase-
money, it must have been offered by the one and accepted by the other of the
parties.

The object of this statute is to require something more than mere words, ex-
pressive of the meeting of the minds of the parties, to pass between the
buyer and the seller.

If the purchase-money or consideration is the payment of a note, or the dis-
charge of an indebtedness, the payment or discharge must be consummated
at the time, so as to bind both parties by their acts rather than by their words.

The facts of the case will sufficiently appear in the opinion
of the court, as delivered by BROWN, J.

*A. Wilkin,* for the appellant.

Brabin, the plaintiff, was in actual possession of the property
at the time it was taken by the defendant. That such pos-
session was sufficient evidence of title to maintain the action
against all the world, except the true owner, and as the defend-
ant set up title in himself only, title in any other person was
of no avail to him. (*Pangburn* v. *Patridge,* 7 Johns., 140; 3
Hill, 168; 20 Johns., 465; 3 Wend., 240; 1 id., 109; 10 id.,
349; 14 id., 335; 15 id., 631; 6 Barb., 79.)

The judge charged the jury as follows: "The defendant
gives evidence of a prior bargain." It was objected by the
plaintiff that this contract was void by the statute of frauds.
The judge then read and explained the statute, and further
charged, "that, according to the defendant's narrative of
facts, the contract rested solely in *words.* There was no
other evidence of it; there was no delivery of the property ·

there was no memorandum made as the contract was narrated by him; nor any payment; nor was the property present at the time; nor anything to save it from the statute of frauds. I advise you that the contract for the purchase of the horses by the defendant, as narrated by himself, is invalid."

The principal question is as to the correctness of this charge by the judge. The charge was proper. The transaction was clearly void within the statute of frauds, and the judge at the circuit was right in so charging. The statute provides (3 R. S., p. 221, § 3, 5th ed.), "that every contract for the sale of any goods, &c., for fifty dollars, or more, shall be void unless a note or memorandum of such contract be made in writing and be subscribed by the parties to be charged thereby; or unless the buyer shall accept and receive part of such goods; or unless the buyer shall, at the time, pay some part of the purchase-money;" none of which conditions were complied with by the defendant and Blackmer, at the time of the pretended purchase and sale of the horses set up by the defendant.

The object of the statute is to furnish evidence other than *words*, of the agreement, that is, overt acts of the parties. (*Archer* v. *Zeh*, 5 Hill, 200; *Clark* v. *Tucker*, 2 Sandf., 157; *Sprague* v. *Blake*, 20 Wend., 61.)

The statute requires payment at the time; that is, during the continuance of the interview. (See 40 Barb., 98.)

*John H. Reynolds*, for the respondent.

Brown, J. The plaintiff was in the possession of a mare and colt which he claimed as owner, by purchase, from Milton Blackmer, in August, 1857. On the 3d of September thereafter, the defendant took the mare and colt from his possession, which he also claimed to own under a purchase from Milton Blackmer, in the month of July preceding. This action was brought by the plaintiff to recover the possession, and was tried at the Monroe Court before Mr. Justice Smith, where the plaintiff had a verdict upon which judgment was entered. An appeal was taken to the General Term of the Supreme

Court for the seventh district, where the judgment was re-versed, and the plaintiff thereupon appealed to this court.

The defendant was a merchant doing business at a place called Mumford, in the county of Monroe, in the vicinity of Blackmer's residence, who was indebted to him at the time of the alleged purchase in the sum of $216. The facts upon which he claimed to have purchased this property were stated by himself as a witness upon the trial, and are substantially as follows: "I went," he said, "to Blackmer's place and wanted him to pay me; he said he could not; I wanted an indorsed note or a chattel mortgage; he declined doing this, because it would hurt his credit; he said he would sell me the bay mare and the colt, and wanted $200 for them, and I wanted to give $150; we finally agreed upon $175 for the mare and the colt; I told him I would give him credit on my books when I got home for the $175, and he said that would be right; I asked what he would take to let the mare and colt remain in the lot until the 1st or 15th September; I went down and examined the property, and went home and made the entry in my book giving him credit for the $175, on the Sunday of the purchase; it is an original entry, and he wanted to know if I was going to put it on the notes or book; I told him if he wanted to settle he could strike out the balance on the books and put the balance on the notes I held against him; he said that was right; he pointed out the mare and colt in the lots; I knew them before I went away, which was the 8th or 10th of August; the mare and colt was in the pasture two days before I went away." He returned home and found Blackmer had sold the property to Brabin, the plaintiff, who was a person in his employment. Upon his cross-examination, it appeared he kept a day-book and a ledger for the purposes of his business. The entries to Blackmer's credit were not upon these books, or in any account of his daily transactions. All that appeared upon any book was an entry made of the mare and colt upon a blank leaf on which there were no other entries. It was not claimed that he gave Blackmer any receipt or discharge for the money for the mare and colt, or that he communicated

to him what he had done. After he separated from Black-mer, he went to the lot where the mare and colt were at pasture and attempted to catch the former. He resided more than a mile from Blackmer, going by the road. These are the facts upon which the defendant relied to take the case out of the operation of the statute of frauds. There was no delivery of the property to the purchaser, and no memorandum of the sale signed by the parties. But it was claimed that the entry made by the defendant upon the blank leaf of his book was a payment of the purchase-money within the mean-ing of statute, and sufficient to give validity and legal effect to the contract of sale. The judge charged the jury "that according to the defendant's narrative of facts, the contract rested solely in words. There was no other evidence of it, there was no delivery of the property, or memorandum made as the contract was narrated by him, nor any payment, nor was the property present at the time, or anything to save it from the statute of frauds. I advise you that the contract for the purchase of the horses, as narrated by the defendant himself, is invalid." To this part of the charge, the counsel for the defendant excepted.

There is no form of words, however elaborately and care-fully constructed, which suffice to effect the sale of goods and chattels of the nature of those claimed in this action. Words, unwritten words, are said to be things; but they are things so evanescent and uncertain, and so easily and frequently misunderstood, that the law will not accept them as evidence of an intention to sell or purchase property of the value of $50 or more. It demands acts which are more positive, cer-tain and less open to misunderstanding and misapprehension, as evidence of a purpose to part with or to accept the owner-ship of personal property. There must have occurred one of the three acts mentioned in the statute, or the sale will not be effected. These acts are not to be performed by one party only; they are to be concurred in by both parties to the con-tract. If the memorandum in writing is relied upon, it must be signed by the parties; not the party to be charged thereby. If a delivery of the goods is offered as the evidence

of the sale, the buyer must have accepted the goods, or a part of them; and this he could not do without the concurrence of the party intending to sell. So if the payment of some part of the purchase-money is depended upon as the consummation of the contract, the purchaser must have concurred in the act by parting with, and the vendor. by accepting, the purchase-money. This seems very plain. The section of the statute employs the words "purchase-money." But it was said in the case of *Artcher* v. *Zeh* (5 Hill, 200), that the statute "must be taken in its spirit to mean anything, or part of anything, given by way of consideration, which is money or money's worth. The object was to have something pass between the parties besides mere words. Some symbol like earnest money." The payment may be made in money or property, or in the discharge of an existing debt, in whole or in part, due from the vendor to the purchaser. Or the extinguishment of, or payment upon, a promissory note held by the latter against the former. A mere agreement to apply the purchase-money to either of these objects, would not be enough, because the contract would still rest in words, and nothing more. The agreement to pay the note or satisfy the debt must be consummated and carried into effect by an act which shall be obligatory upon the purchaser and enable the vendor to enforce the contract of sale. The note should be delivered up and canceled; or, if the purchase-money falls short of complete payment, it should be extinguished by an indorsement made upon it in writing which shall operate effectually as an extinguishment *pro tanto.* And if the purchase-money is to be applied to pay an open account, in whole or in part, the creditor and purchaser should part with some written evidence of such application which shall bind him and put it into the power of his debtor and vendor to enforce the contract. Without this, or something like this, the contract is a mere collection of words, and the statute evaded.

When Hyde and Blackmer separated at the house of the latter, at the time of the alleged sale, nothing had been done towards perfecting the sale but fixing upon the price of the horses. The former gave to the latter no receipt or voucher

that $175, the price of the property, had been received on account of the debt to Hyde. He furnished no statement of the account with $175 credited to Blackmer, upon which he might be charged thereafter. And it was optional with him whether he credited the money upon his books or not. When he did credit it, as claimed, he did not enter it in his day-book, containing a journal of his daily transactions: nor did he credit in Blackmer's account upon his leger, where it would have been patent to the observation of others as well as himself. He put it upon a blank leaf of a book by itself, a place, in a measure, inaccessible to Blackmer, if not to all other persons. And this entry he never communicated to Blackmer, or to any one else. Suppose in the meantime the horses had been destroyed, or stolen from the pastures of Blackmer, upon whom would the loss have fallen? Not upon Hyde, certainly; for the act to be done by him in consummation of the sale was wanting, even if an entry of the purchase-money for the horses upon the credit side of Blackmer's account upon the defendant's leger, could be regarded as a payment within the meaning of the statute, which I am not ready to admit. Still, there was no such entry in the present case, and all knowledge of the act that the defendant claims to have done, was confined to himself exclusively, until after Blackmer had sold and delivered the horses to the plaintiff.

I think the judge at the circuit, in his charge to the jury, was entirely right. The order of the General Term, granting a new trial, should be reversed, and the judgment of the Special Term affirmed, with costs.