## Norman Pitney *vs.* The Glens Falls Insurance Company.

The plaintiff and G. P. being joint owners of a quantity of wool, application to the defendant, for insurance, was made by the plaintiff in his own name, alone, and the policy was made out to him, only. On receiving the policy, and finding it to be different from what he designed to have it, in that it did not include, or insure, the interest of G. P. in the wool, the plaintiff returned the policy to the agent, for correction in that particular, and the agent was informed that G. P. was a joint owner of the wool. The agent thereupon inserted in the policy the following clause: "In case of loss, if any, one-half payable to G. P., as his interest may appear."

The plaintiff had other insurance on his own interest in the property, which was not consented to in writing by the defendant; and for that reason it was insisted that the policy in question was invalid and not binding on the insurers, under a provision contained in it, that "if any other insurance has

Pitney *v.* Glens Falls Insurance Company.

been, or shall hereafter be, made upon the said property, and not consented to by the company in writing, hereon . * * * this policy shall be null and void."

*Held*, 1. That in construing the clause subsequently inserted in the policy, by the agent, respecting the interest of G. P., the court was not confined to the consideration of the terms themselves, for the purpose of ascertaining their meaning and the consequent intention of the parties in using them; it being settled, as a general rule of construction applicable to all contracts, that the court may consider the terms which are to be construed, in the light of all the surrounding circumstances, in order to understand the intent of the parties.

2. That in view of the surrounding circumstances, the policy should be construed to be an insurance upon the joint property of the plaintiff and G. P.; it being clearly the intention of the parties that it should be such; and it having been accepted as such, after the correction had been made therein.

3. That, so construed, there was no misrepresentation of the title to the property, in the application; for the insured were its absolute and unqualified owners, and the warranty imported by the representations made was true; the property insured being the joint interest of both the persons who in fact applied to be, and were, insured.

4. That, for that reason, in order to avoid the policy by other insurance, such other insurance should be on the same title and interest; for the terms " said property," used in the clause requiring any other insurance to be consented to in writing, on the policy, clearly referred to the property insured, and to nothing else.

5. That an insurance on the interest, or title, of one of the joint owners, was not within the fair import, or legal signification of the clause.

6. That the existence of an insurance on the interest of the plaintiff in the wool, and on that alone, when the policy in question was issued, and during its continuance, did not render the latter invalid, under this clause.

An agreement by the insured, to sell the property insured, made prior to its destruction, or injury by fire, is not such a divesting of his interest therein as will bar a recovery by him upon the policy; where it appears that the sale was within the statute of frauds; the agreement was not in writing; no part of the property was delivered; and no portion of the purchase money was paid, nor was it to be paid until the wool was weighed; and then the price was to be applied upon a previous debt.

Although a partial acceptance of the property sold will, ordinarily, take a sale of the entire quantity out of the operation of the statute of frauds, it cannot have that effect upon that which may have previously been wholly destroyed by fire. As to that portion, the obligations and rights of the parties become fixed whenever the destruction takes place; and the right of action arising out of the loss can afterwards be divested only by a release, payment, or satisfaction.

Pitney *v.* Glens Falls Insurance Company.

A provision, in a policy of insurance, that no act, or omission, of the company, or any of its officers, or agents, shall be deemed a waiver of a full and strict compliance with the requirements thereof, as to the preliminary proofs of loss, unless the waiver be in express terms in writing, signed by the president or secretary of the company, is directly in conflict with the settled rules of law established for the government of this class of cases.

Although a party may renounce the benefit of settled legal rules existing in his favor, yet before he should be held to have done so, something clearly evincing that to have been his purpose should be required to be affirmatively, or positively shown.

The acceptance of a policy of insurance, containing a clause declaring that no act, or omission of the insurers, their officers, or agents, shall be deemed a waiver of compliance with the requirements, as to preliminary proofs of loss, unless it be by a waiver, in express terms, in writing, signed, &c., to which clause there is no evidence that the attention of the insured was ever, in any manner, directed, should never be permitted to produce such a result.

Where the preliminary proofs furnished expressly offered to supply "any other information that might be required," on call ; *Held* that notwithstanding a provision in the policy, that any waiver of defects in the proofs must be in writing, it was still in the power of the company to waive that requirement ; and that by not responding to such offer while the defects could have been corrected and supplied, it should be held to have made that waiver.

A motion to strike out the testimony of a witness because he testified from a copy of a memorandum, showing the weight of a quantity of wool, should, in order to be effectual, be made as soon as that is discovered to be the case.

Where counsel, instead of making such a motion as soon as the fact appeared, continued the examination of the witness afterwards, on that and other subjects, at considerable length, without objecting ; *Held* that by so doing, the objection to the evidence as being secondary in its nature, was waived, because not made in time.

Where the plaintiff is clearly entitled to recover, under the evidence, the only real question relating to the amount, the jury have a right to rely, for that, on the testimony of a witness calculating and stating it ; where there is no contradiction of such testimony.

THE appeal in this cause is from a judgment recovered by the plaintiff, and from an order denying a new trial, in an action upon a policy of insurance against fire. The action was brought by the plaintiff in his own right, and as the assignee of George N. Pitney, who was a joint owner with the plaintiff in the property insured. The policy was

issued by an agent, on the 2d day of November, 1866, on twenty-four hundred pounds of wool,. which was mostly consumed by fire on the evening of the 9th of April, in the year 1867. The essential facts of the case will appear in the opinion.

*Brown & Sheldon*, for the appellants.

*Job G. Sherman*, for the respondent.

*By the Court*, DANIELS, J. When the application was made for the insurance, it was made in such a manner and in such terms, that the defendants' agent understood it to be desired exclusively for the applicant, Norman Pitney, the plaintiff in this suit. But after the policy was received by him, and within two or three weeks afterwards, it was examined, and found to be different from the form in which he testified he designed to have it, in the circumstance that it did not include, or insure, the interest of George N. Pitney in the wool. The policy was accordingly returned to the agent for correction in this particular. And he testified that the plaintiff then informed him that he had forgotten to have his son's name inserted in the application for the policy, and that he was a joint owner in the wool. His son, he said, also told him so; and so did Mr. Burch, who returned the policy to him to have it corrected. The agent, thereupon, inserted in the policy the following clause: "In case of loss, if any, one-half payable to George N. Pitney, as his interest may appear." This made the entire insuring clause read as follows: "By this policy of insurance the Glens Falls Insurance Company * * * do insure Norman Pitney, of Cambridge, against loss or damage by fire, to the amount of twelve hundred dollars, on twenty-four hundred pounds of wool in horse shed on the George McKie farm, Cam-

bridge.   In case of loss, if any, one half payable to George N. Pitney, as his interest may appear."

The plaintiff had other insurance on his own interest in the property insured, which was not consented to in writing by the defendant, and for that reason it was insisted, on the trial, that this policy was invalid and not binding on the defendant under the provision contained in it, "that if any other insurance has been, or shall thereafter be, made upon the said property, and not consented to by this company in writing hereon,   *   *   *   this policy shall be null and void."   The validity of the policy, therefore, as well as the right of the plaintiff to recover as the assignee of George N. Pitney, depends upon the construction which it should receive as an insurance.   For as both interests were set forth in the complaint as substantive causes of action, there was nothing to prevent such a recovery, in the form of the pleadings.   Even if the causes of action were not set forth as fully as the circumstances indicated the propriety of stating them, they still sufficintly appeared to render the omissions mere matters of variance, which the court, at the trial, was justified in disregarding, under the liberal provisions of the Code.   Standing by itself, in the policy, the clause afterwards inserted by the agent, relative to the interest of George N. Pitney, would not warrant a recovery on account of the destruction of any interest he had in the property insured, as a joint owner of it.   For the terms, "as his interest may appear," would necessarily have to be applied to, and be controlled by, the antecedent term "loss," which would entitle him to share in the loss sustained by the plaintiff as the sole party insured, in case any of the proceeds should be payable to him in consequence of some arrangement between them, controlling the payment of the loss.   This was held to be the effect of a similar clause in the case of *Grosvenor* v. *Atlantic Ins. Co.*, (17 *N. Y.* 391.)

But in construing this clause in the policy, the court is

not confined to the mere consideration of the terms them
selves, for the purpose of ascertaining their meaning, and
the consequent intention of the parties in using them.
For it is well settled, as a general rule of construction ap-
plicable to all contracts, that the court may consider the
terms to be construed in the light of all the surrounding
circumstances under which they were used, and necessarily
affecting their signification, in order more perfectly to
understand the intent and meaning of the parties. (1 *Greenl.
on Ev.* 7th ed. § 277. *Blossom* v. *Griffin,* 3 *Kern.* 569.) This
rule is rather more explicitly, but still no more compre-
hensively, stated by *Parsons,* as follows: " The situation
of the parties, at the time, and of the property which is
the subject matter of the contract, and the intention and
purpose of the parties in making the contract, will often
be of great service in guiding the construction, because, as
has been said, this intention will be carried into effect, so
far as the rules of language and the rules of law will per-
mit." (2 *Pars. on Cont.* 11, 2d ed.)

Under this rule the court, therefore, may consider the
circumstance that the plaintiff at the time when the policy
was issued, and when the addition of this clause to it was
made, sustained no such relation, and was under no such
obligation to his son George N. Pitney, as could possibly
have entitled the latter to any part of the insurance money,
arising out of the destruction of his own interest in the
subject matter of the insurance. There was nothing,
therefore, upon which this clause, according to the ordinary
import of its terms, could be made to operate. And giv-
ing it such a construction would for that reason render it
entirely nugatory, which could not have been the intent
or design of either of the parties. This distinguishes the
present case from the one already referred to, where full
effect could be given to the terms made use of, by accord-
ing to them their ordinary meaning, and in which nothing
appeared indicating the propriety of any different con-

Pitney *v.* Glens Falls Insurance Company.

struction. And beyond that circumstance is the additional one, that George N. Pitney was, at the time when the policy was issued, a joint owner as tenant in common with the plaintiff in the subject matter insured, and he had no other title or interest in it whatsoever. In view of these circumstances the inference is very plain, that as the parties must have intended something by the insertion of this clause, and unless they intended that the interest of George N. Pitney should be insured by it, it could have no practical effect; such must have been the object and design of its insertion. And that such was the design, was shown, as a matter of fact, by what was said to the agent, and which he acted upon when the policy was returned to him for correction in this respect. The defendant objected to this evidence, but even if it might not be admissible in the cases of contracts more carefully, guardedly and deliberately drawn than policies of insurance, which are usually hasty and imperfectly considered agreements, and for that reason to be liberally construed, in order to accomplish the ends of the parties, it is settled in this State that such evidence may be given, in actions upon those instruments. Accordingly, where a policy contained a warranty "that the property insured was free from all liens, and from all claims that may, or might be prosecuted against, or be made or become liens upon the same," and which was ostensibly broken by existing chattel mortgages upon it, and a recovery for that reason had previously been reversed, it was held that the insured could show that the object of the insurance was to secure the interest of the insured as a mortgagee, and that this was communicated to the defendant when the policies were issued, and the existence of the mortgages had been made known to the insurer. And upon that being established, the recovery was sustained, where without it no action could have been maintained. (*Bidwell* v. *N. W. Ins. Co.*, 19 *N. Y.* 179. *Same* v. *Same*, 24 *id.* 302.) A similar rule was also applied

in the case of *Solmes* v. *The Rutgers Fire Ins. Co.*, (3 *Keyes*, 416.) This policy, therefore, in view of these circumstances, should be construed to be an insurance upon the joint property of the plaintiff and George N. Pitney; for that it should be such, was clearly the intention of the parties to it. And by the evidence in the case it was shown that it was accepted as such, not only by the plaintiff, but also by George N. Pitney, to whom it was exhibited after the correction in it had been made.

As so construed, there was no misrepresentation of the title to the property insured, in the application, for the insured were its absolute and unqalified owners. And the warranty imported by the representations made, was strictly and literally true, for the same reason. The property insured was the joint interest of both the persons who in fact applied to be, and were, insured, and nothing more nor less. And for that reason, in order to avoid the policy by other insurance, such other insurance should be on the same title and interest. For the terms "said property," used in the clause requiring other insurance to be consented to in writing on the policy, clearly referred to the property insured, and to nothing else. An insurance on the interest, or title, of one of the joint owners was not within its fair import, or legal signification. The insurance which was shown to be on the interest of the plaintiff in the property, and on that alone, when the policy in suit was issued, and during its continuance, did not render it invalid under this clause. (*Godin* v. *London Assur. Co.*, 1 *Burr.* 489. *Mu. Safety Ins. Co.* v. *Hone*, 2 *Conn.* 235, 240. *Ætna Ins. Co.* v. *Tyler*, 16 *Wend.* 385.) In the last case, the chancellor, whose opinon seems to have been adopted, in its desision, held that, "to constitute a double insurance, both policies must be upon the same insurable interest, either in the name of the owner of that interest, or in the name of some other person for his benefit." (*Id.* 396.)

But the defendant insisted that no recovery could be

Pitney *v.* Glens Falls Insurance Company.

had for the plaintiff's intestate, in the property, because the plaintiff had parted with his interest in the wool by a sale before it was destroyed, or injured by the fire. In the proofs of loss, the plaintiff stated that he had agreed to sell his share of the wool to Francis S. Thayer. But an agreement to sell was not enough to divest his interest in the property. By the evidence it appeared that this agreement was not in writing, no part of the property was delivered, and no portion of the purchase money was paid; neither was it contemplated that it should be paid until the wool was weighed. Then the price that it amounted to was to be applied on a debt Thayer held against the plaintiff. The wool was never weighed, and consequently the event never arose on which alone the price of the wool destroyed was to be applied upon that debt.

As this sale was within the statute of frauds, it required the delivery by the seller, and the acceptance by the buyer, of some portion of the property, to divest the plaintiff of his title and place the property at the risk of the purchaser. No more was shown on that subject than that the farm on which the wool was stored was rented to Burch from the 1st of April preceding the fire, and he took possession on that day, jointly occupying the house with the plaintiff, however, until after the fire had happened. He was to look after the wool for Thayer. And it appears that on the afternoon before the fire, he procured the key of the wool room from Mrs. Pitney, who retained possession of it, proceeded with it to the room, unlocked the door, went in and looked at the wool, then locked the door again and returned the key to the person from whom he had obtained it. This was all he had to do with the wool, as the agent, or representative, of the purchaser. And it was obviously insufficient to constitute the acceptance of it which is required by the authorities to satisfy the words of the statute of frauds. He did not, according to his own evidence, go to the wool room to take pos-

session of it for Thayer, who had verbally promised to buy it. But simply to look at. And the fact that he returned the key of the room to the plaintiff's wife, after he had looked at it, very satisfactorily shows that he did not regard himself as having it in his possession, or as having accepted it on account of the purchaser.

To take a case of this kind out of the operation of the statute, requires some act indicating it to be the purpose of the person performing it, to accept the property as a purchase; and no such act was shown to have been intended or performed in this case. (*Shindler* v. *Houston*, 1 *Comst.* 261. *Brabin* v. *Hyde*, 32 *N. Y.* 519.)

The subsequent acceptance, by the purchaser, of that part of the wool which was saved from the fire, had no effect upon the rights of the assured under the policy. For although a partial acceptance of the property will, ordinarily, take the sale of the entire quantity out of the operation of the statute of frauds, it cannot have that effect upon that which may have previously been wholly destroyed by fire. As to that, the obligations and rights of the parties become fixed whenever the destruction may take place, and the right of action arising out of the loss can afterwards only be divested by a release, payment or satisfaction. (*McKnight* v. *Dunlop*, 1 *Selden*, 537, 544.)

The defendant further resisted the plaintiff's right to recover, upon the ground that the preliminary proofs of loss were not as complete as the policy required. In the conditions. of insurance it was provided that no act or omission of the company, or any of its officers or agents, should be deemed a waiver of a full and strict compliance with the requirements made concerning such proofs, except it be by a waiver in express terms, in writing, signed by the president or secretary of the company. This provision is directly in conflict with the settled rules of law established for the government of this class of cases. And while there is no doubt but that a party may renounce the

benefit of settled legal rules existing in his favor, yet before he should be held to have done so, something clearly evincing that to have been his purpose should be required to be affirmatively or positively shown. The acceptance of a policy of insurance containing a clause declaring that no act or omission of the insurers, their officers or agents, shall be deemed a waiver of compliance with requirements as to preliminary proofs of loss, unless it be by a waiver, in express terms, in writing, signed, &c., to which there is no evidence that the attention of the insured was ever in any manner directed, should never be permitted to produce such a result. The policy of the law stands directly in the way of allowing persons to be entrapped into the implied surrender of their well established legal rights by the success of any such ingenious device. If it should be allowed to prevail, the insurer would be secured a privilege which could be so used as to defeat all its undertakings, and legally protect a career of fraud never yet sanctioned by either law or good morals.

But in this case the insured, in the preliminary proofs furnished, expressly offered to supply "any other information that might be required," on call. Notwithstanding the provision that the waiver of defects in the proofs must be in writing, it was still in the power of the company to waive that requirement. And by not responding to this offer while the defects could have been corrected and supplied, it should be held to have made that waiver. For, good faith, as well as every consideration of fair dealing, required it to specify the defects in the proofs when they were accompanied with this offer, if the company did not intend to waive any further act in that respect, on the part of the insured. (*O'Niel* v. *Buffalo Fire Ins. Co.,* 3 *N. Y.* 122. *Post* v. *Ætna Ins. Co.,* 43 *Barb.* 352.) The objections to these proofs came too late, and were properly overruled at the trial.

The motion to strike out the evidence given by the

plaintiff as a witness, concerning the quantity of wool contained in the wool room, because he testified from a copy of a memorandum showing such weight, was also made too late. It should, in order to have rendered the application effectual, have been made as soon as that was discovered to be the case. But instead of making it then, the defendant's counsel continued the examination of the witness afterwards, on that and other subjects, to the extent of nine pages of the printed case, before the motion was made. By doing that, the objection to the evidence as secondary in its nature, was waived because not made in time, and for that reason properly overruled. (*Quin* v. *Lloyd*, 41 *N. Y.* 349.)

Evidence was given upon the trial, by the witness Thayer, that upon a calculation of the amount of wool destroyed by the fire, the plaintiff's loss amounted to just the sum for which the verdict was rendered; and that, too, after deducting his proportion of the wool thrown out of the building and not burned. There was no contradiction of this evidence on the part of the defendant, and it was fairly left to the jury, without concluding them by the statements and calculations made by the witness. He may have slightly overstated the amount of the loss, but that does not so clearly appear by the calculation furnished by the defendant's counsel as to warrant any interference with the result.

The plaintiff was clearly entitled to recover, under the evidence—the only real question relating to the amount; and for that the jury had a right to rely on the evidence of the witness calculating and stating it.

The judgment and order should therefore be affirmed, with costs.

[THIRD DEPARTMENT, GENERAL TERM, at Schenectady, November 14, 1871. *Miller*, P. J., and *Parker* and *Daniels*, Justices.]