120   611
d134 ³228

## GORMAN *v.* BROSSARD.

1. STATUTE OF FRAUDS—CONTRACTS OF BARTER.
   Contracts of barter are regarded, so far as the statute of frauds is concerned, as contracts of sale.

2. SAME—SALE OF CURBSTONE—CONSTRUCTIVE DELIVERY.
   A mere oral agreement on the part of one person to sell, and of another to accept, a quantity of curbstone lying where the seller deposited them after completing a public contract, the buyer agreeing to send for them when desired, is, notwithstanding the bulky nature of the subject-matter, insufficient to constitute a constructive delivery which will satisfy the statute of frauds; a constructive delivery, even, not being allowed to rest in words alone.

3. SAME—PAYMENT.
     A mere oral agreement whereby a creditor is to take payment
     of a debt of $125 in curbstone belonging to his debtor, where
     no receipt or other evidence is given of the extinguishment
     of the debt, cannot be sustained, as against the objection that,
     there being no delivery, it violates the statute of frauds, on
     the ground that the transaction itself amounts to a payment
     within the meaning of that statute.

Error to Wayne; Steere, J., presiding. Submitted
January 25, 1899. Decided July 11, 1899.

*Assumpsit* by Charles A. Gorman against Hubert
Brossard for goods sold and delivered. From a judgment
for defendant, plaintiff brings error. Reversed.

*Walter Barlow*, for appellant.

*Jonas B. Houck* and *Robert Parker*, for appellee.

HOOKER, J. The plaintiff shipped a quantity of cross-
ing and curb stone to the defendant, upon his order. The
defendant received the stone, and used most of them.
Upon receiving the bill, he learned that the shipment ex-
ceeded the amount ordered, and he notified the plaintiff
that the excess was subject to his order. He used some
of the excess, however, and drew the remainder to a vacant
place. He paid for all that he used, and refused to pay a
draft for $129 for the remainder. The plaintiff brought
an action to recover the balance, and appeals from a
verdict and judgment for the defendant.

The defendant testified that the plaintiff called upon him
in Detroit, and they went together to where the stone
were, and that he agreed to accept them in satisfaction of
his debt. The plaintiff denied this, and the question was·
submitted to the jury. The plaintiff claimed that this
alleged contract was void under the statute of frauds; the
defendant, that it was not, because it was accompanied by
a delivery of the stone,—it being contended that the title
passed at the time of the agreement. The judge submitted
the question to the jury, and permitted them to find that

there was a delivery of the stone on the occasion mentioned. It is alleged that this was error. The stone were in an alley, and were at hand when the alleged arrangement was made. The defendant testified:

"*Q.* Did you go and show it to him?
"*A.* Yes; we started from Mr. Barlow's office, in the Buhl Block, and went up Griswold street, and got on the car, and went up as far as the Western Market, and we got off at Ninth avenue. It was 45 or 50 or 60 feet of curbing that was right by the little office of the board of public works; and, after we examined them, he was satisfied, and we crossed over to where the balance was, across the street, in the alley, where I had some racks—block racks—stored away. There was a pile of cobblestone there in the alley, and Mr. Gorman examined the curbstone I had there,—a fraction over 300 feet that was, including the 50 feet at the Western Market. I told him I would move them over there, and he said he was going to Toledo, and that he would have them shipped there, or send for them himself."

It is said in the brief that the stone were in a public alley when the arrangement was made, but we find no evidence that the alley was public. It seems obvious, from the record, that the defendant accepted all of the stone, notwithstanding his letter, and the case did not go to the jury upon the theory that he did not. By his own testimony it is shown that he used about half of the excess, and that he attempted to turn out what was left in payment, which is inconsistent with a claim that he did not accept them.

It is claimed on behalf of the defendant:

*First.* That the transaction was in the nature of barter, and not a sale for money, and therefore not within the statute.

*Second.* If it shall be held to have amounted to a sale, that it was not within the statute, because there was an acceptance and receipt of the property.

The first proposition rests upon a strict construction of the statute, by which its application would be limited to cases of technical sales for money. Counsel cite no cases

in point, and such as we have found do not support their claim. Mr. Browne, in his work on Statute of Frauds (§ 293), says that "contracts of barter are regarded, so far as the statute of frauds is concerned, as contracts of sale." Among the cases cited is *Dowling* v. *McKenney*, 124 Mass. 478, where a contract to exchange a monument for lands was held to be within the statute. See, also, *Kuhns* v. *Gates*, 92 Ind. 66, and *Rutan* v. *Hinchman*, 30 N. J. Law, 255.

The other question is not so easily disposed of. 2 How. Stat. § 6186, provides:

"No contract for the sale of any goods, wares, or merchandise, for the price of fifty dollars or more, shall be valid, unless the purchaser shall accept and receive part of the goods sold, or shall give something in earnest to bind the bargain or in part payment, or unless some note or memorandum in writing of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

The transaction in question consisted entirely of a conversation. No act was shown, beyond the oral agreement on the one part to give, and upon the other to accept, the stone there present, in satisfaction of the debt. If the stone had not been upon the premises of the vendor or his bailee, but had been upon the lands of a third party, who was not a bailee (*e. g.*, upon public ground, in which the vendor had no special interest), it is said that the "vendor might effect a delivery by putting the goods at the disposal of the vendee, and suffering him to take actual control of them,"—citing Benj. Sales, § 178. In support of this the author cites *Tansley* v. *Turner*, 2 Bing. N. C. 151. But that case does not seem to involve the statute of frauds, because the contract was in writing. The same is true of the case of *Cooper* v. *Bill*, 3 Hurl. & C. 722. Thus, although the author applies these cases to a discussion of "acceptance and receipt" in connection with the statute of frauds, they involved a question of the passing of title under a valid contract. But the

text does not imply that the language of the contract alone is sufficient to constitute an acceptance and receipt. Here the question is whether enough was done to render the contract valid and efficacious to pass title, and the authorities are harmonious that something is necessary beyond a mere oral agreement to sell and to buy.

In *Marsh* v. *Rouse*, 44 N. Y. 647, it was said that, "to take the case out of the statute, the acts of the parties must have been of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer." The case follows *Shindler* v. *Houston*, 1 N. Y. 261 (49 Am. Dec. 316). It was there said:

"As no part of the purchase money was paid by the vendee, the contract above stated was void by the statute of frauds (2 Rev. Stat. p. 136, § 3, subd. 3), unless the buyer 'accepted and received' the whole or a part of the property sold. The object of the statute was not only to guard against the dishonesty of parties and the perjury of witnesses, but against the misunderstanding and mistakes of honest men. If the contract is reduced to writing, and 'subscribed by the parties to be charged thereby,' this object is effectually attained. The writing becomes its own interpreter. Where this is omitted, but the vendee has paid part of the price, or the vendor has delivered and the buyer has accepted a portion or all of the property, upon the strength of the agreement, these acts not only indicate deliberation and confidence upon the part of the contractors, but they furnish unequivocal evidence of the existence of a contract of some sort between them, although its terms and provisions must, after all, depend upon the recollection of witnesses.

"The case before us is destitute of all such collateral evidence. No acts of the party sought to be charged are proved. We are presented with a naked verbal agreement. The declarations relied upon as evidence of a delivery and acceptance constitute a part of the contract, and, of course, are obnoxious to all the evils and every objection against which it was the policy of the law to provide. The acts of part payment, of delivery and acceptance, mentioned in the statute, are something over and beyond the agreement of which they are a part per-

formance, and which they assume as already existing. The entire absence of such evidence distinguishes the present case from all those that have been cited by the counsel for the plaintiff in support of this action: *Chaplin* v. *Rogers*, 1 East, 192; *Jewett* v. *Warren*, 12 Mass. 300 (7 Am. Dec. 74); *Riddle* v. *Varnum*, 20 Pick. 280; *Bates* v. *Conkling*, 10 Wend. 391; 2 Kent, Comm. (4th Ed.) 500, 501. The strong case, from the Pandects, of the column of granite, is not an exception; for it is fairly to be inferred that the consent of the vendor that the purchaser should take possession was subsequent to the sale.

"I am aware that there are cases in which it has been adjudged that, where the articles sold are ponderous, a symbolical or constructive delivery will be equivalent in its legal effect to an actual delivery. The delivery of a key of a warehouse in which goods sold are deposited furnishes an example of this kind. But, to aid the plaintiff, an authority must be shown that a stipulation in the contract of sale for the delivery of the key or other *indicia* of possession will constitute a delivery and acceptance, within the statute. No such case can be found. The entire contract being void by the statute, the stipulation in reference to a constructive delivery would fall with the other provisions. In *Phillips* v. *Bistolli*, 2 Barn. & C. 511, the property was sold by an auctioneer, and delivered to the purchaser, who, after detaining it three or four minutes, handed it back, saying he was mistaken as to the price. The vendor refused to receive the property, and the jury found that the excuse was false in fact. The verdict was set aside; the court saying that, to satisfy the statute, there must be a delivery by the vendor, with an intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter, with the intent of taking possession as owner. This, I apprehend, is the correct rule, and it is obvious that it can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intentions of the parties. Mere words are not sufficient. *Bailey* v. *Ogden*, 3 Johns. 421. Declarations accompanying an act, and explanatory of it, are undoubtedly admissible evidence, as a part of the *res gestœ*. This is all that is established by the modern authorities. *Jewett* v. *Warren*, 12 Mass. 300; *Dutilh* v. *Ritchie*, 1 Dall. 171; *Baldey* v. *Parker*, 2 Barn. & C. 44; *Bailey* v. *Ogden*, 3 Johns. 421."

In the same case, Bronson, J., concurring, said:

"A writing must be made, part of the purchase money must be paid, or the buyer must accept and receive part of the goods. Mere words of contract, unaccompanied by any act, cannot amount to a delivery. To hold otherwise would be repealing the statute. There may be a delivery without handling the property or changing its position. But that is only where the seller does an act by which he relinquishes his dominion over the property, and puts it in the power of the buyer, as by delivering the key of the warehouse in which the goods are deposited, or directing a bailee of the goods to deliver them to the buyer, with the assent of the bailee to hold the property for the new owner. In such case there is, in addition to the words of bargain, an act by which the dominion over the goods is transferred from the seller to the buyer. Here there was no delivery, either actual or symbolical.   *   *   *   It is undoubtedly true that it will not always be easy to make an actual delivery of bulky and ponderous articles. But there are other ways of satisfying the statute of frauds. The parties may put their agreement in writing, or the buyer may pay the whole or some part of the purchase money."

Wright, J., in the same case, said:

"The cases of *Elmore* v. *Stone* [1 Taunt., 458] and *Chaplin* v. *Rogers* are the most barren of acts indicating delivery, but these are not authority for the doctrine that words, unaccompanied by acts of the parties, are sufficient to satisfy the statute. Indeed, if any case could be shown which proceeds to that extent, and this court should be inclined to follow it, for all beneficial purposes the law might as well be stricken from our statute book; for it was this species of evidence, so vague and unsatisfactory, and so fruitful of frauds and perjuries, that the legislature aimed to repudiate. So far as I have been able to look into the numerous cases that have arisen under the statute, the controlling principle to be deduced from them is that, when the memorandum is dispensed with, the statute is not satisfied with anything but unequivocal acts of the parties,—not mere words, that are liable to be misunderstood and misconstrued, and dwell only in the imperfect memory of witnesses. The question has been, not whether the words used were sufficiently strong to express the intent of the parties, but whether the acts connected with them, both of seller and buyer, were equivocal or unequivocal. The best-considered cases hold that there

must be a vesting of the possession of the goods in the vendee, as absolute owner, discharged of all lien for the price on the part of the vendor, and an ultimate acceptance and receiving of the property by the vendee, so unequivocal that he shall have precluded himself from taking any objection to the *quantum* or quality of the goods sold. Chit. Cont. 390, and cases cited; Hil. Sales, 135, and cases cited; *Maberley* v. *Sheppard*, 10 Bing. 102; *Acebal* v. *Levy*, Id. 384. But will proof of words alone show a delivery and acceptance, from which consequences like these may be reasonably inferred? Especially if those words relate, not to the question of delivery and acceptance, but to the contract itself? * * * I think not."

See, also, *Rodgers* v. *Phillips*, 40 N. Y. 519; *Young* v. *Blaisdell*, 60 Me. 272.

The case of *Hallenbeck* v. *Cochran*, 20 Hun, 416, is much like the present case. An oral contract for the sale of hay, when the parties were in sight of a part of it, was held within the statute, though the plaintiff said at the time, "The hay is yours," and defendant said, "Yes." The case of *Shindler* v. *Houston, supra*, has provoked criticism, but it is not necessary for us to adopt all that is there said. This court has had occasion to consider the *Shindler Case*, and has held that "it supports the only sound view, viz., that words are not enough, and that the statute can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intentions of the parties." *Alderton* v. *Buchoz*, 3 Mich. 329.

But it may be said that the case need not turn upon the question of receipt and acceptance of the goods, because the contract may be valid without delivery, if something is given by way of earnest or part payment. 2 How. Stat. § 6186. We think there is no escape from the conclusion that this was an arrangement for the sale of chattels in consideration of the cancellation of a debt due from the vendor to the vendee. As we have said, nothing occurred except mutual promises,—words, merely,—and the question is whether that was such a payment as comes within the statute. The subject is treated in Browne,

Stat. Frauds, §§ 342, 343.   A New York case is quoted,
where there was an agreement for novation, but the court
held· that it was not part payment, but merely an oral
agreement to pay, which, like any other promise to pay,
·was insufficient.   *Artcher* v. *Zeh*, 5 Hill, 205.   In *Ely* v.
*Ormsby*, 12 Barb. 570, decided in 1850, this case was fol-
lowed.   The plaintiff bought a span of horses for $300,
which amount was applied, but not indorsed, upon a mort-
gage which he held against the defendant, the same
being on file.   In a suit upon the contract it was held
void under the statute.   It was said that words alone
would not answer the requirements of the statute; citing
*Artcher* v. *Zeh* and *Shindler* v. *Houston*, hereinbefore
referred to.·   In 1865 the question arose again in the case
of *Brabin* v. *Hyde*, 32 N. Y. 523, and it was there said,
with the approval of the entire bench, that:

"This seems very plain.   The section of the statute
employs the words 'purchase money.'   But it was said
in the case of *Artcher* v. *Zeh*, 5 Hill, 200, that the stat-
ute 'must be taken in its spirit to mean anything, or part
of anything, given by way of consideration, which is
money or money's worth.   The object was to have some-
thing pass between the parties besides mere words,—some
symbol, like earnest money.'   The payment may be made
in money or property, or in the discharge of an existing
debt, in whole or in part, due from the vendor to the pur-
chaser, or the extinguishment of or payment upon a prom-
issory note held by the latter against the former.   A mere
agreement to apply the purchase money to either of these·
objects would not be enough, because the contract would
still rest in words, and nothing more.   The agreement to
pay the note or satisfy the debt must be consummated and
carried into effect by an act which shall be obligatory
upon the purchaser, and enable the vendor to enforce the
contract of sale.   The note should be delivered up and
canceled; or, if the purchase money falls short of com-
plete payment, it should be extinguished by an indorse-
ment made upon it in writing which shall operate effect-
ually as an extinguishment *pro tanto*.   And if the pur-
chase money is to be applied to pay an open account, in
whole or in part, the creditor and purchaser should part

with some written evidence of such application which shall bind him, and put it into the power of his debtor and vendor to enforce the contract. Without this, or something like this, the contract is a mere collection of words, and the statute evaded."

This language was quoted and followed in 1872 in the case of *Walrath* v. *Richie*, 5 Lans. 362; and *Walrath* v. *Ingles*, 64 Barb. 265, is in accord with the principle. See, also, *Organ* v. *Stewart*, 60 N. Y. 413. The case of *Matthiessen, etc., Refining Co.* v. *McMahon's Adm'r*, 38 N. J. Law, 536, supports the same doctrine, following and approving *Walker* v. *Nussey*, 16 Mees. & W. 302. See, also, *Gaddis* v. *Leeson*, 55 Ill. 83. There is a *dictum* in *Walker* v. *Nussey* that implies that, where the goods sold are to extinguish the debt, it may be considered a payment; but it is plainly at variance with the logic of the cases cited. Had it the force of authority, it would be out of harmony with the great majority of cases.

The testimony in this case not only fails to show that the plaintiff took possession of the stone, but shows that he declined to accept and receive them. The defendant testified that he told the plaintiff that he would move the stone for him, but he did not accept the offer; saying that he was going to Toledo, and that he would have them shipped there, or send for them himself. Nor does it show a payment taking the agreement out of the statute.

We are of the opinion that there was no question for the jury.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.