## YEITER v. CAMPAU.

1. Pleading — Assumpsit—Common Counts — Bill of Particulars—Sales.

Under a declaration on the common counts and a bill of particulars notifying defendant that plaintiff claimed the purchase price of apple butter sold and delivered to defendant, plaintiff could not recover manufacturing expenses for taking back the butter and working it over for resale at the request of defendant, who had never received a statement of the amount claimed; testimony tending to prove the claim should have been excluded until the true issue was presented by amending the bill of particulars.

2. Sales—Acceptance—Statute of Frauds.

To satisfy the statute of frauds, mere words indicating acceptance are insufficient, some unequivocal act of the vendee is necessary to a valid contract of sale, if there is not written evidence and no part of the price was paid.

3. Same.

Where defendant was the cashier of a bank that had loaned money to plaintiffs to use in their business and plaintiffs contended that defendant bought a quantity of their product on his own account, and, finding he could not sell it, ordered them to store it in a warehouse specified by him, afterwards requesting them to work it over and sell it, evidence that he paid checks drawn on the bank for supplies used in manufacturing the butter at a time when he was requiring them to use due bills in payment of other purchases; that he almost daily visited their manufactory and urged them to hurry the work, saying he would stand back of them; that he procured a place to store the product (the sole evidence, being proof of what he said to plaintiffs); that he was present at numerous occasions when it was delivered for storage, that he sent samples of the apple butter to the prospective purchasers and tried to make sales after it was stored; directed plaintiffs to remanufacture and sell the butter, and also put off the time of settlement upon the pretext that he would settle it all up when the entire lot was disposed of, were, except his presence at the mill, either mere words or equivocal conduct because of his relation to the creditor bank: it was for the jury

to determine whether he had unequivocally accepted the butter and they should have been instructed that such acceptance was necessary to a valid contract.

Error to Kent; McDonald, J. Submitted November 13, 1912. (Docket No. 107.) Decided March 20, 1913.

Assumpsit by William Yeiter and Clarence W. Yeiter against Frank E. Campau for goods sold and delivered. Judgment for plaintiffs. Defendant brings error. Reversed.

*Norris, McPherson & Harrington* (*Butterfield & Keeney*, of counsel), for appellant.

*Geo. E. & M. A. Nichols*, for appellees.

This action is in assumpsit. Plaintiffs, in their bill of particulars, state that their demand is for

" 80,000 pounds of apple butter, at 6 cents per pound, heretofore sold and delivered by the said plaintiffs to the said defendant, amounting to $4,800, and no part of which said sum has been paid by the said defendant to the said plaintiffs."

The plea is the general issue. Plaintiffs recovered a judgment for $3,852.89.

For several years prior to November, 1907, plaintiffs were engaged in the manufacture of cider, jelly, apple butter, etc., at the village of Alto, Mich. The defendant is the cashier of the Farmers' State Bank of Alto. The plaintiffs did business with the bank of which defendant was cashier, and on November 1, 1907, were indebted to the bank on certain promissory notes to the amount of about $3,200. It was the claim of plaintiffs, and they introduced testimony tending to support it, that at about that time the panic of that year affected their business, and they determined to work up the apples they then had on hand into vinegar stock; that defendant then told them he had an order for two car loads of apple butter, and

asked them if they could get it out; that they replied that they could; and that thereupon he agreed to take said apple butter and pay therefor at the rate of 6 cents per pound.  They claim that during the month of November they manufactured apple butter under the contract; that when they had a car load ready for shipment they were advised by defendant that his parties were not yet ready to receive it, and that they should store the manufactured product in the warehouse cellar of Bush & O'Hara.

Plaintiffs claim that, following this instruction of defendant, they stored in said warehouse about 2,700 pails of apple butter, retaining the balance of defendant's order in the cider mill and barn.  They further claim that in March, 1908, defendant told them that his parties refused to take the apple butter; that he inquired if it would keep; and, being advised that plaintiffs believed it would, "he said if it would keep we would try and see what we could do with it the next year."

In the fall of 1908 plaintiffs claim that defendant asked them what they could do with the apple butter, and was advised by them that they did not know, unless it was worked over; that they would try it; that thereafter they did work over a portion of it, and disposed of some 800 or 900 pails that fall.  In working over the product they claim to have expended for labor and material $606.65, and to have sold the worked over butter for $1,489.92, leaving a balance of $883.27 as the net result of that fall's operations.  The next fall (1909) plaintiffs claim that defendant—

" Asked me what we could do with it, and I told him I didn't know whether we could work it over or not; I would have to examine it, and I didn't want to work it over, and him and my brother got together and kind of urged me into working it over, and we worked it over the next fall."

As a result of the operation in 1909 plaintiffs sold $1,-705.87 worth of the worked-over product, and expended for labor and material $1,265.91, leaving a balance of $439.96.

All the apple butter sold during the years 1908 and 1909

was sold by plaintiffs in their own names, and the money received therefor was deposited in the bank to their own credit.

During the year 1908 plaintiffs borrowed no money from the Alto bank, but from time to time renewed the notes which they had already made. To carry on their operations in the fall of 1909, plaintiffs borrowed from the bank the further sum of $1,864, a portion of which was used to work over and market the apple butter in question. For this money plaintiffs gave to the bank demand notes during October and November, 1909, and on December 29, 1909, they were consolidated with the amount already owed by plaintiffs, and a new note for $5,416.80 was given. This note was renewed May 17, 1910, to the amount of $4,771.

Plaintiffs thereafter made payments thereon down to May 5, 1911, at which time there appears to have been a balance due upon the note of about $4,065. The officials of the bank endeavored to get from plaintiffs security by way of mortgage. This security plaintiffs refused to give, and the bank brought suit upon the claim.

Plaintiffs filed their declaration against defendant in the case at bar on May 25, 1911. No statement of the account between plaintiffs and defendant, showing plaintiffs' dealings with the apple butter, was rendered to defendant. Upon the trial such a statement was produced, which plaintiffs testified had been made up within a week.

Defendant denied that he had made any contract with plaintiffs to purchase the apple butter in question, denied that he had arranged for its storage in the warehouse of Bush & O'Hara, or instructed plaintiffs to store it there, denied that he had ever accepted the product, or any part thereof, and asserted that he had never exercised any dominion or control over it. His evidence was supported by that of Bush & O'Hara, the warehousemen. O'Hara testified that the arrangements for storage were made by one of the plaintiffs (Clarence Yeiter), and not by defendant;

that plaintiffs removed the apple butter from the warehouse in the fall of 1908 and in the fall of 1909, getting the key from him for that purpose; and that defendant never came to the warehouse to inspect the product. He testified further that neither of the plaintiffs ever gave him any directions to allow defendant to take the butter. James A. Bush, the other partner in the warehouse, gave testimony to the same effect.

Defendant and appellant presents his case under the following heads:

"(1) There could be no recovery under the pleadings.
"(2) There was error of the trial judge in not permitting the jury to disregard the testimony in regard to the alleged expense of remaking and selling the apple butter.
"(3) There was no receipt and acceptance of the goods by the defendant sufficient to satisfy the statute of frauds: (a) The alleged receipt and acceptance is based solely upon alleged words of the defendant, and there was no act of the defendant indicating the receipt or acceptance. (b) It conclusively appears from the undisputed evidence that plaintiffs never parted with, and defendant never acquired the right to possess and control, the goods. (c) There was no unequivocal act of the parties indicating a receipt or acceptance. (d) There was no acceptance by the buyer.
"(4) The verdict was against the weight of the evidence.
"(5) Error in not submitting to the jury the question as to the amount of goods placed in warehouse.
"(6) Error in admitting prejudicial, irrelevant testi-. mony."

BROOKE, J. (*after stating the facts*). We will consider such of these propositions as are necessary to a determination.

It was defendant's position that there could be no recovery under the pleadings, because, the action being in assumpsit, and the bill of particulars notifying him that the plaintiffs' claim arose out of the sale and delivery to him of the butter in question, the plaintiffs, under the pleadings, could not show that they had, at defendant's

request, repossessed themselves of the product, expended money upon its remanufacture and sale, sold it to third persons, appropriating the proceeds to their own use, and giving defendant credit upon the contract for the net proceeds of the subsequent transaction. When plaintiffs offered proof upon this phase of the case, defendant promptly objected, saying:

"The declaration being on the common counts, and the action, if any, being on a breach of contract, the common counts would not lie on the count for goods sold and delivered, if he took this property back and sold it, which objection was overruled, on the ground that Yeiter had not testified that he took the property back, but that he sold it at the solicitation of Mr. Campau, and counsel for defendant duly excepted."

And again:

"The defendant objected, because defendant was not prepared to meet a claim as to all the expenses that plaintiffs paid out in working over the apple butter under the declaration on the common counts, but supposed the defendant was sued for the price of the apple butter, and that the matter should not be allowed to go in at all in an action for goods sold and delivered."

Upon this point defendant cites the cases of *Lloyd* v. *Iron Co.,* 74 Mich. 83 (41 N. W. 867), and *Bullock* v. *Ueberroth,* 121 Mich. 293 (80 N. W. 39).

Plaintiffs cite several cases to the effect that a recovery may be had under the common counts in assumpsit, where the contract has been fully performed by the plaintiff. This position we do not understand is questioned by defendant. If, after delivery of the product to the warehouse, at defendant's request, plaintiffs had chosen to sue in assumpsit for the recovery of the agreed price, the action would undoubtedly lie. But that is not the case made out by plaintiffs' proofs, though it is the one indicated by the declaration. A large part (nearly $2,000) of plaintiffs' recovery is based upon their claim that, after *delivery* and *acceptance* of the apple butter, they, at de-

fendant's request, expended money for labor and materials in working over and selling the product. While the cases cited do not specifically cover the point raised, it would not seem difficult of determination upon principle.

The defendant, prior to the time suit was brought, had not received from plaintiffs an account for the goods claimed to have been sold and delivered, nor for the various sums of money claimed to have been expended for labor and materials upon such goods after delivery. The declaration and bill of particulars filed gave defendant no notice of the real claim of plaintiffs.

The purpose of all pleading is to frame an issue upon which the parties may proceed to trial. The issue here presented by the pleadings was not the one covered by the proofs. The testimony to which objection was made should have been excluded until, by proper amendment, the true issue was presented. It follows that the motion for a directed verdict, made on behalf of defendant at the close of plaintiffs' case should have been granted.

As the case must go down for a new trial, it seems proper to consider the third ground for reversal urged by defendant.

Defendant's argument in support of this claim is that the statute of frauds cannot be satisfied by an alleged acceptance, based solely upon alleged words of the defendant; and that there is no evidence in the record of any unequivocal act on the part of the defendant indicating a receipt or acceptance. The law upon the question is clearly set forth in *Alderton* v. *Buchoz,* 3 Mich. 322, and *Gorman* v. *Brossard,* 120 Mich. 611 (79 N. W. 903), and cases there cited.

Plaintiffs concede that the law is as claimed by defendant, but insist that in this record there is evidence of acts on the part of the defendant unequivocally indicating an acceptance. The following alleged acts are pointed out:

"(a) Paying checks of the plaintiffs given for supplies to be used in manufacturing the apple butter, at a time when he was requiring the plaintiffs to use duebills in

payment of local purchases and financing operations, where before he had refused to finance.

"(b) Almost daily being at the mill and looking after the manufacturing of the apple butter and urging plaintiffs to hurry with the manufacture, and saying to plaintiffs that he would stand back of them.

"(c) Getting a place to store the apple butter and directing that it should be stored in the warehouse which he had obtained the use of for that purpose, and being personally present at different times while it was being stored.

"(d) Taking samples of the apple butter to send to people to whom he hoped to sell or was selling it to; seeing different parties about purchasing, and trying to make sales after the delivery in the warehouse.

"(e) Directing plaintiffs to work over the apple butter for him and sell it for him.

"(f) Putting off the time of settlement upon the pretext that when the apple butter was all disposed of he would then settle up and pay for the same."

While the question is not without difficulty, it seems plain that some, at least, of these alleged acts are not acts, within the meaning of our decisions, and some are clearly not unequivocal:

(a) The defendant was engaged in the banking business, and his acts in the premises might very properly be referred to a proper performance of his duties in behalf of his principal, the bank.

(b) Defendant's presence in plaintiffs' mill may have some legal significance as an act. His alleged instructions to them are, at most, mere words.

(c) Here, again, the only evidence that plaintiffs offer of the act is that defendant told them he had secured the warehouse.

(d) Defendant, on behalf of his principal, the bank, was vitally interested in collecting the claim of the bank. To that end he might very properly urge persons to buy plaintiffs' product. Was this conduct unequivocal?

(e, f) These are obviously words instead of acts.

Upon a retrial the jury should be instructed that an acceptance cannot be predicated upon mere statements alleg-

ed to have been made by defendant, but must be shown by some act or, acts, on the part of the defendant, unequivocally indicating such acceptance.

The judgment is reversed, and a new trial ordered.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.